**WIEBOLDT STORES, INC., By and Through its Trustee in Bankruptcy, Thomas F. RALEIGH, Plaintiff,**

v.

**Jerome M. SCHOTTENSTEIN, et al., Defendants.**

No. 87 C 8111.

United States District Court, N.D. Illinois, E.D.

Feb. 23, 1990.

Sarah R. Wolff, M. Marshall Seeder, Sachnoff & Weaver, Ltd., Chicago, Ill., for Wieboldt Stores.

Jeffrey Rudman, James D. St. Clair, Albert H. Notini, Hale & Dorr, Boston, Mass. and Barry Pitler, Sigi Offenbach, Pitler & Mandell, Chicago, Ill., for Jerome Schottenstein, Schottenstein Stores Corp., Geraldine Schottenstein, Jay L. Schottenstein, Susan Schottenstein, Ann Schottenstein, Saul Schottenstein, Ari Deshe, Jon Diamond, Irving Harris, George Kolber and Thomas Ketteler.

David Bodiker, Bodiker & Holland, Columbus, Ohio, for Charles H. Schottenstein, Gary Schottenstein, Randee Schottenstein, Robert M. Schottenstein and Estate of Alvin Schottenstein.

Joel Wolosky, Daniel H. Mintz, Parker Chapin Flattau & Klimpl, New York City and John G. Jacobs, Jonah Orlofsky, Robert Plotkin, Jeffrey Grant Brown, Plotkin & Jacobs, Ltd., Chicago, Ill., for MBT Corp., Julius Trump, Edmond Trump, James M. Jacobson, Albert Roth and William W. Darrow.

Kenneth R. Gaines, Dennis P. Birke, Altheimer & Gray, Chicago, Ill., for William Darrow.

James E. O'Halloran, Clifford G. Kosoff, John F. Hennessy, Jr., O'Halloran Kosoff & Miller, Northbrook, Ill., for Estate of David C. Keller and Robert A. Podesta.

Marc C. Smith, Arvey, Hodes, Costello & Burman, Chicago, Ill., for Gen. Elec. Credit Corp.

**164**

Sheri Bluebond, Arnold Quittner, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., Neil K. Quinn, Mary Anne Capron, Mr. Joseph B. Lederleitner, Pretzel & Stouffer, Chtd., Chicago, Ill., for Porter Wright Morris & Arthur.

Gary M. Elden, John R. McCambridge, George R. Dougherty, Grippo & Elden, Chicago, Ill., for O. Kirby Colson III and Isham, Lincoln & Beale.

Joel J. Africk, Vilia M. Dedinas, Rodney D. Joslin, Jenner & Block, Chicago, Ill., for Laventhol & Horwath.

Paul H. Aloe, Gerald Harris, Rubin Baum Levin, Constant & Friedman, New York City and Stephen L. Agin, Roger L. Longtin, Keck, Mahin & Cate, Chicago, Ill., for Weston Associates and Saugatuck Investments Ltd.

Malcolm Brooks, Elias N. Matsakis, Robert J. Block, Thomas G. Gardiner, McBride, Baker & Coles, Chicago, Ill., for One North State Street Ltd. Partnership, State Street Venture, Boulevard Bank Nat. Ass'n, as Trustee, BA Mortg. And Intern. Realty Corp., and Bennett & Kahnweiler, Assoc.

Marc Dreier, Fulbright, Jaworski, & Reavis McGrath, New York City and David S. Foster, Alan J. Wertjes, Latham & Watkins, Chicago, Ill., for Leonard Shaykin.

Theodore Gewertz, Douglas K. Mayer, Wachtell, Lipton, Rosen & Katz, New York City and Marvin A. Tenenbaum, John R. McLain, J. Samuel Tenenbaum, Becker & Tenenbaum, Chicago, Ill., for AMA/WSI, Inc., Alan Cohen, Lewis Krueger and Anthony Grillo.

Julian Jawitz, Glen Cove, N.Y., pro se.

Robert F. Klimek, Robert L. Richiardi, Klimek & Richiardi, Ltd., Arlington Heights, Ill., for Morton Huff and David Babcock.

Robert J. Kriss, Carrie Huff, Mayer, Brown & Platt, Chicago, Ill., for Household Commercial Financial Services, Inc.

Philip V. Martino, Theodore A. Shapero, Mark A. Berkoff, Rudnick & Wolfe, Chicago, Ill., for Polk Bros. Inc. and Polk Bros. Found.

Lawrence R. Samuels, Jacquelyn F. Kidder, Patricia K. Smoots, Ross & Hardies, Chicago, Ill., for George P. Kelly.

Peter G. Swan, David A. Kaufman, Emalfarb, Swan & Bain, Highland Park, Ill., for Gilbert K. Granet, Gilbert K. Granet, Inc., WSI Liquidation Trust, WSI Investors, Inc., and Christopher Jansen.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

On December 20, 1985 WSI Acquisition Corporation ("WSI"[1]) acquired Wieboldt Stores, Inc. ("Wieboldt") in a so-called leveraged buyout ("LBO"). On September 24, 1986 Wieboldt filed for relief under Chapter 11 of the Bankruptcy Code. A year later Wieboldt's Chapter 11 trustee ("Trustee") filed this action against various defendants involved in the Wieboldt LBO alleging, *inter alia,* that the LBO constituted a fraudulent conveyance of Wieboldt's assets. In November of 1988 this court granted certain defendants' motions to dismiss and denied the remaining defendants' motions to dismiss the Trustee's complaint. At that time this court detailed the facts of the Wieboldt LBO; it need not repeat them here. *See Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 493–496 (N.D. Ill.1988).

Since the denial of their motions to dismiss, the remaining defendants answered the Trustee's complaint and filed third-party complaints. The third-party defendants have moved to dismiss those third-party complaints under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 9(b).[2]

---

1. The court will refer to both WSI Acquisition Corporation and its assignee and successor in interest, WSI Liquidation Trust, as "WSI."

2. On August 22, 1989 this court dismissed the trustee's sole claim against the law firm of Porter, Wright, Morris & Arthur ("PWMA") and its partner Harry L. Henning, which Wieboldt

hired to advise its board of directors ("Board") prior to approval of WSI's tender offer. Thus, Mr. Henning and PWMA have moved for a voluntary dismissal of their third-party complaint under Federal Rule of Civil Procedure 41(c). Third-party defendant George P. Kelly contests this motion, however. Although Mr.

## I. PARTIES

The court has divided the myriad third-party plaintiffs and third-party defendants into several groupings for analytic convenience. The following four groupings currently have third-party complaints pending:

A. *William W. Darrow*—a member of Wieboldt's board of directors ("Board") until WSI's completion of the LBO on December 20, 1985;[3]

B. *Robert A. Podesta*—also a member of the Board prior to the LBO;

C. *the Schottenstein third-party plaintiffs*—Jerome M. Schottenstein, Irving Harris, George Kolber, and Myron Kaplan, all members of the Board before the LBO; other Schottenstein related defendants who owned stock and/or stock options in Wieboldt prior to tendering them to WSI;[4] and finally,

D. *the Trump third-party plaintiffs*—James M. Jacobson and Albert Roth, members of the Board prior to December 20, 1985; Julius and Edmond Trump, who tendered Wieboldt stock to WSI "through" MBT Corporation, also a third-party plaintiff in this group.

The third-party defendants can be divided into five clusters:

A. *the WSI third-party defendants*—the parties affiliated with WSI prior to its acquisition of Wieboldt; those who assumed control of the Board immediately after the LBO;[5]

B. *the AMA/Cohen third-party defendants*—the parties who acquired control of the Board on August 22, 1986—eight months after the LBO;[6]

C. *the lender third-party defendants*—the parties involved in lending money to WSI to secure financing for the tender offer;[7]

Kelly does not oppose *dismissal* of the Henning/PWMA third-party complaint, he objects to dismissal *without costs.*

However, requiring Mr. Henning and PWMA to pay Mr. Kelly's costs is inappropriate. The Henning/PWMA third-party complaint sought contribution from Mr. Kelly for his alleged involvement in the making of misrepresentations prior to WSI's tender offer and for his mismanagement of Wieboldt's assets as a member of the Board after the LBO. Mr. Kelly has failed to demonstrate that these claims for contribution are not well grounded in fact. Indeed, Mr. Kelly admittedly served as a Wieboldt director after the LBO. Because the third-party plaintiffs seek contribution for an "injury" to Wieboldt allegedly caused by activities occurring both before *and after* the LBO, it is not self-evident as Mr. Kelly claims that Mr. Henning and PWMA's contribution claims against him have no basis in law or fact. Therefore, not only is the Henning/PWMA third-party complaint dismissed without costs, but Mr. Kelly's motion for Rule 11 sanctions is denied at this time. Accordingly, the third-party defendants' motions to dismiss Mr. Henning and PWMA's third-party complaint are moot.

3. The court derived the descriptions of the parties from the third-party complaints, the well-pleaded allegations of which must be presumed true in ruling on the third-party defendants' motions to dismiss. *See Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

4. Specifically: Jerome M. Schottenstein, individually and as trustee of certain trusts; Schottenstein Stores Corporation; Geraldine Schot-

tenstein, as trustee of a certain trust; Jay L. Schottenstein, individually and as trustee of a certain trust; Susan Schottenstein and Ann Schottenstein, as trustee of trusts; Saul Schottenstein; Ari Deshe; Jon Diamond; and Thomas Ketteler.

5. A full listing of these parties include: the WSI Liquidation Trust, assignee and successor in interest to WSI Acquisition Corporation; WSI Investors Corp.; Gilbert K. Granet, Inc.; Gilbert K. Granet, Morton L. Huff, David E. Babcock, George P. Kelly, Stanley Seiden and John H. Sheperd, most of whom were affiliated with WSI Acquisition Corporation prior to its acquisition of Wieboldt and all of whom served on Wieboldt's Board following the tender offer and prior to the AMA/Cohen third-party defendants' assumption of control (see *infra*); and Christopher Jansen and Bernard Krakower, both of whom were officers and principal shareholders after the LBO but before the AMA/Cohen third-party defendants assumed control of the Board. Tangentially, Mr. Krakower has moved for leave to substitute a motion to dismiss in lieu of his answer *pro se.* His motion is granted.

6. These parties include Lewis Kruger, Anthony Grillo, Leonard Shaykin, Stanley Seiden, Alan Cohen and AMA/WSI, Inc. ("AMA"), a corporation formed and controlled by Mr. Cohen to acquire the stock of Wieboldt.

7. The lenders include: Household Consumer Financial Services, Inc. ("HCFS"); General Electric Credit Corp. ("GECC"); and BA Mortgage International Realty Corp., Bennett & Kahnweil-

D. *the shareholder third-party defendants*—a purported class of Wieboldt shareholders who tendered their Wieboldt shares to WSI pursuant to the tender offer;[8] and lastly,

E. *Laventhol & Horwath* ("L & H")—the accounting firm engaged by WSI Acquisition Corporation to provide financial information relating to the tender offer and LBO.

## II. DISCUSSION

The third-party defendants have moved to dismiss the third-party complaints against them on four primary grounds: (1) lack of subject matter jurisdiction; (2) failure of the counts alleging contribution to state a claim upon which relief can be granted; (3) failure of the counts alleging negligent misrepresentation and breach of contract against L & H to state a claim upon which relief can be granted; and (4) failure of the counts alleging fraud to plead that fraud with the particularity required under Federal Rule of Civil Procedure 9(b). The court addresses each of these challenges in turn.

### A. *Subject Matter Jurisdiction*

AMA and L & H argue that this court lacks subject matter jurisdiction over the third-party claims against them. According to the third-party complaints, in August of 1986 the AMA/Cohen third-party defendants purchased an ownership interest in Wieboldt and took control of the Board. (*E.g.*, Trump Third–Party Complaint ["TPC"] at ¶¶ 45–46.) However, because this ownership and control occurred over eight months after the LBO, AMA contends that the third-party plaintiffs' contribution claims could not have arisen from the "same transaction or occurrence" as the Trustee's claims—thereby precluding ancillary jurisdiction. Taking a different tack, L & H argues that the bankruptcy jurisdiction statute, 28 U.S.C. Section 1334(b), provides the sole basis for this

court's ancillary jurisdiction and does not confer jurisdiction here. (L & H's Reply at 5 n. 5.) Neither AMA nor L & H is correct. The third-party claims fall within this court's ancillary jurisdiction.

Ancillary jurisdiction exists in part because of the judicial economy of trying closely related claims in the same court. *See Hartford Accident and Indemnity Co. v. Sullivan*, 846 F.2d 377, 380 (7th Cir. 1988); 13 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3523 at 85 (1975). Absent an independent jurisdictional basis this court can exercise ancillary jurisdiction only over claims which are factually similar to and logically dependent upon the Trustee's claims. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

■ Applying this standard ancillary jurisdiction certainly supports the third-party plaintiffs' claims for contribution. Even if AMA's alleged misconduct occurred several months after the conduct complained of by the Trustee, disposition of the third-party claims for contribution from AMA[9] nonetheless depends directly upon resolution of the Trustee's lawsuit. Thus, because the issues of the primary lawsuit and the claims for contribution are logically entwined to the extent that the latter are contingent upon the former, ancillary jurisdiction exists. *Sullivan*, 846 F.2d at 380.

■ Similarly, the negligent misrepresentation and breach of contract third-party claims asserted against L & H are sufficiently dependent upon the Trustee's claims to support ancillary jurisdiction. The third-party claims against L & H relate specifically to L & H's advice in connection with the tender offer and LBO at issue in the Trustee's lawsuit. If it is determined in the Trustee's action that approval of the tender offer involved no fraudulent conveyance or breach of fiduciary duties, then the third-party plaintiffs may have no basis for

---

er Associates, Boulevard Bank National Association and State Street Limited Partnership.

**8.** Representatives of the class are: Polk Brothers, Inc.; Polk Brothers Foundation; Julian

Jawitz; Alan S. Emory; Saugatuck Investments Co., Inc.; and Weston Associates.

**9.** Only contribution claims are asserted against the AMA/Cohen third-party defendants.

their claims of negligent misrepresentation and breach of contract against L & H. Thus, like the contribution claims, the third-party claims against L & H and the primary lawsuit are logically entwined so as to support ancillary jurisdiction. *Id.; see also FSLIC v. Williams*, 599 F.Supp. 1184, 1210 (D.Md.1984) (bank's "movement toward insolvency" was relevant transaction for purposes of counterclaims). L & H has not cited and this court has not found any legal authority supporting the notion that the bankruptcy jurisdiction statute limits this court's otherwise legitimate exercise of ancillary jurisdiction. Thus, this court need not analyze whether under 28 U.S.C. Section 1334(b) the claims against L & H are "related to" Wieboldt's Chapter 11 reorganization.

### B. *Right To Contribution*

The third-party defendants argue that as a matter of law the third-party plaintiffs have no right to contribution from them. The third-party defendants are right—under neither federal nor state law can the third-party plaintiffs state a cause of action for contribution.

#### 1. No Right to Contribution Under Federal Law

Some of the third-party plaintiffs contend that both the Bankruptcy Code and the federal common law support a federal right to contribution for the fraudulent conveyance claims asserted against them.

##### a. *The Bankruptcy Code*

■ Nowhere does the Bankruptcy Code expressly provide for a right to contribution. *In re John Peterson Motors, Inc.*, 56 B.R. 588, 591 n. 5 (Bankr.D.Minn.1986). Thus, the third-party plaintiffs urge this court to do what no other court has yet done—find an implied right to contribution in the Bankruptcy Code.

Whether an implied right of action exists under a statute is a matter of Congressional intent. *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77,

91, 101 S.Ct. 1571, 1580, 67 L.Ed.2d 750 (1981). To determine whether Congress intended a right to contribution the court must follow the four-part test set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975):

> First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ...? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*King v. Gibbs*, 876 F.2d 1275, 1280 (7th Cir.1989), *quoting Cort v. Ash*, 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted).

Regarding the first part of the *Cort v. Ash* test, the language of the Bankruptcy Code in no way indicates that the Code was enacted for the special benefit of a class of which the third-party plaintiffs are members. Section 548 of the Code allows a trustee simply to avoid certain "fraudulent" transfers; it gives no indication, express or implied, of where ultimate financial responsibility for wrongful transfers should lie.[10] In fact, by allowing a trustee to recover improperly distributed assets Section 548 of the Bankruptcy Code benefits a debtor's unpaid creditors at the *expense* of the recipients of fraudulent transfers.

The third-party plaintiffs correctly note that under Section 502 of the Code they may file claims against the estate to recover any voided transfers. However, this alone is insufficient to indicate that Congress enacted Section 548 for the *special* benefit of transferees of fraudulent conveyances. Indeed, any Congressional concern over the rights of transferees of

---

**10.** Likewise, Section 550, which prescribes the liability of a transferee of an avoided transfer, merely indicates from whom the trustee may recover. The section is silent as to apportionment of the recovery among transferees.

fraudulently conveyed property could be peripheral at best.

Similarly, the second part of the *Cort v. Ash* test—legislative intent—does not support an implied right to contribution. As already noted, nowhere in the Bankruptcy Code did Congress expressly create or even mention a right to contribution. Additionally, as the third-party plaintiffs concede, there is no reference in the legislative history of Section 548 either favorable or unfavorable to contribution. This court agrees with the court in *In re John Peterson Motors, Inc.*, 56 B.R. at 591 n. 5 when it concluded: "There is certainly nothing in Title 11 [of the Bankruptcy Code] to suggest that Congress expressly or implicitly intended to create a right to contribution or indemnity."

Thus, the third-party plaintiffs are not members of the class for whose especial benefit the Bankruptcy Code was enacted and there is no indication that Congress intended to create a right to contribution. Failure to satisfy these first two parts of the *Cort v. Ash* test dooms judicial recognition of an implied right to contribution under the Bankruptcy Code. *King*, 876 F.2d at 1281, *citing California v. Sierra Club*, 451 U.S. 287, 298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101 (1981). Because Congressional intent to create a right to contribution cannot be inferred from the language of the Bankruptcy Code, the Code's structure, or any other source, the "essential predicate" for implication of a cause of action for contribution simply does not exist. *Northwest Airlines*, 451 U.S. at 94, 101 S.Ct. at 1582; *Karahalios v. National Federation of Federal Employees, Local 1263*, — U.S. ——, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989).

### b. *Federal Common Law*

■ Not only does the Bankruptcy Code offer no right to contribution, the federal common law recognizes no such right. *Northwest Airlines*, 451 U.S. at 96–97, 101 S.Ct. at 1583. Undaunted, the third-party plaintiffs urge this court to recognize such a right through the exercise of its common-law judicial power to fashion appropriate

remedies for unlawful conduct. However, in enacting the Bankruptcy Code Congress created a comprehensive legislative program providing for no right to contribution. This court refuses to fashion a new remedy that might disturb this carefully considered legislative scheme. *Id.*, 451 U.S. at 97, 101 S.Ct. at 1584.

### 2. No Right to Contribution Under State Law

Because federal law provides no right to contribution the third-party plaintiffs look to Illinois law. In particular, they appeal to the Illinois Contribution Act, the Illinois statute governing improper corporate distributions, the Illinois fraudulent conveyance statute, and the Illinois common-law doctrine of equitable apportionment. However, none of these sources of state law support the third-party contribution claims.

### a. *The Illinois Contribution Act*

■ The third-party plaintiffs' primary basis for their contribution claims is the Illinois Contribution Act, *Ill.Ann.Stat.* ch. 70, ¶ 301 *et seq.* (Smith–Hurd 1989) ("Contribution Act"). The Contribution Act codifies *Skinner v. Reed–Prentice Division Package Machinery Co.*, 70 Ill.2d 1, 15 Ill.Dec. 829, 374 N.E.2d 437 (1977), which overturned the long-standing common-law rule prohibiting contribution among tortfeasors. *Doyle v. Rhodes*, 101 Ill.2d 1, 77 Ill.Dec. 759, 762, 461 N.E.2d 382, 385 (1984).

The Contribution Act provides in relevant part: "[W]here 2 or more persons are subject to liability in tort arising out of the same injury to person or property ... there is a right of contribution among them...." *Ill.Ann.Stat.* ch. 70, ¶ 302(a) (Smith–Hurd 1989). Thus, under the Contribution Act a third-party defendant can be liable to a third-party plaintiff only if: (1) both parties are subject to liability in tort and (2) that liability arises out of a common injury. In this case the first requirement is not met— the third-party plaintiffs are not "subject to liability in tort" to the Trustee. Thus, this court need not consider the second requirement—liability from the same injury.

The Trustee asserts claims against the third-party plaintiffs only for breach of fiduciary duties, violation of federal and state fraudulent conveyance law, and violation of the Illinois Business Corporation Act ("IBCA").[11] None of these claims sound in tort.

In Illinois breach of fiduciary duty is not a tort, but rather is controlled by the substantive laws of agency, contract, and equity. *Kinzer v. Chicago*, 128 Ill.2d 437, 132 Ill.Dec. 410, 414, 539 N.E.2d 1216, 1220 (1989). The third-party plaintiffs urge this court to distinguish *Kinzer*, arguing that it involved interpretation of the Illinois Tort Immunity Act rather than the Illinois Contribution Act and thus is inapposite. However, the Illinois Supreme Court in *Kinzer* did not limit its holding to the Illinois Tort Immunity Act. Moreover, this court can find no sensible reason for recognizing breach of fiduciary duty as a tort under the Tort Immunity Act, but not as a tort under the Contribution Act. *See People v. Community Hospital of Evanston*, 189 Ill. App.3d 206, 136 Ill.Dec. 702, 706, 545 N.E.2d 226, 230 (1st Dist.1989). Thus, the Trustee's claims for breach of fiduciary duty do not sound in tort for purposes of the Contribution Act.

Similarly, the Trustee's claims for violation of fraudulent conveyance law also do not subject the third-party plaintiffs to liability in tort. Although Illinois courts have yet to address the issue, the analysis of fiduciary duty claims employed by the Court in *Kinzer* indicates that fraudulent conveyance claims too are equitable or quasi-contractual rather than tortious in nature. Indeed, neither the federal nor the state fraudulent conveyance provisions speak in terms of "liability" at all; both statutes merely authorize a trustee to "avoid" certain fraudulent transfers of a debtor's property. 11 U.S.C. § 548(a); *Ill. Ann.Stat.* ch. 59, ¶ 4 (Smith–Hurd 1989).

As the court stated in *Elliott v. Glushon*, 390 F.2d 514 (9th Cir.1967):

> The purpose of the [fraudulent conveyance] sections of the Bankruptcy Act ... is clearly to preserve the assets of the bankrupt; they are not intended to render civilly liable all persons who may have contributed in some way to the dissipation of those assets.... The legislative theory is cancellation, not the creation of liability for the consequences of a wrongful act.

*Id.* at 516. Given the narrow purpose of fraudulent conveyance law it is unsurprising that several other jurisdictions have held that fraudulent conveyance actions do not sound in tort.[12] This court is convinced that if faced with the issue, the Illinois Supreme Court would hold the same.

The Trustee's claims under Section 8.65 of the IBCA also do not subject the third-party plaintiffs to liability in tort. IBCA Section 8.65 permits directors to recover from shareholders certain prohibited corporate distributions. Like fraudulent conveyance claims, however, actions for improper corporate distributions essentially are claims by creditors for restitution. Thus, claims for contribution under IBCA Section 8.65 sound in quasi-contract, not tort. *See United States v. Neidorf*, 522 F.2d 916, 918 (9th Cir.1975).

It is clear, then, that none of the third-party plaintiffs are subject to liability in tort to the Trustee. Nonetheless, the third-party plaintiffs attempt to skirt the Contribution Act's "subject to liability in tort" requirement by insisting that the phrase is ambiguous and thus accommodates their contribution claims.

The third-party plaintiffs rely upon the Illinois Supreme Court's ruling in *Doyle v.*

---

**11.** *See* Amended Complaint, Counts I—VI (federal fraudulent conveyance claims), Count VII (state fraudulent conveyance claim), Counts VIII—IX (breach of fiduciary duties), and Count X (contribution under the IBCA). This court previously dismissed Count XI—aiding and abetting breach of fiduciary duty. *See* Memorandum Opinion and Order dated August 22, 1989.

**12.** *See, e.g., United States v. Neidorf*, 522 F.2d 916, 918 (9th Cir.1975); *United States v. Franklin National Bank*, 376 F.Supp. 378, 384 (E.D.N. Y.1973); *Desmond v. Moffie*, 375 F.2d 742, 743 (1st Cir.1967); *Hearn 45 St. Corp. v. Jano*, 283 N.Y. 139, 141, 27 N.E.2d 814, 816 (1940).

*Rhodes,* 101 Ill.2d 1, 77 Ill.Dec. 759, 461 N.E.2d 382 (1984). *Doyle* involved a plaintiff who was injured by a defendant's automobile while working as a highway flagman. The defendant filed a third-party complaint seeking contribution from the plaintiff's employer, which allegedly also was negligent. The employer moved to dismiss the third-party complaint, arguing that since the exclusive remedy provision of the Illinois Workers' Compensation Act replaced the defendant's common-law tort remedy, the employer no longer was "subject to liability in tort" to the plaintiff and thus could not be sued for contribution under the Contribution Act.

The Illinois Supreme Court disagreed. The Court held that because "the intent of the contribution statute was to reach anyone who is culpable regardless of whether they have been immunized from a direct tort action by some special defense or privilege," the defendant's third-party claim for contribution was proper. *Id.,* 77 Ill.Dec. at 763, 461 N.E.2d at 386. Seizing upon this language the third-party plaintiffs in this case argue that after *Doyle* it makes no difference whether parties are actually "subject to liability in tort" at all, as long as they share "culpability" for an alleged injury. Such an interpretation, however, not only is untrue to the text of the Contribution Act, it misreads *Doyle.*

The *Doyle* Court permitted a right to contribution only when a statutory remedy—in that case the Illinois Workers' Compensation Act—had displaced a *tort* remedy. Indeed, the fact that the plaintiff in *Doyle* still could recover a *tort* judgment against his employer for his work-related injury if the employer failed to raise the defense of the Workers' Compensation Act factored heavily in the Court's decision. *Id.,* 77 Ill.Dec. at 764, 461 N.E.2d at 387. As the Court stated:

At the time of an injury for which an employer's negligence is partly responsible, the employer is in fact "subject to liability in tort" to his employee, although that liability can be defeated depending on the response he chooses to make to his employee's claim in the event the employee decides to sue in tort.

*Id.* Thus, the Court in *Doyle* did not abolish the "subject to liability in tort" requirement—it created an exception to the requirement in favor of parties who would be liable in tort *but for* a statutory defense to common-law tort liability. Because the third-party plaintiffs in this case are neither actually nor potentially liable in tort to the Trustee, under *Doyle* the Contribution Act cannot support their third-party contribution claims.

Citing two Illinois appellate court decisions the third-party plaintiffs urge this court to extend the reasoning of *Doyle* and hold that the Contribution Act's "subject to liability in tort" language nonetheless does not preclude claims for contribution by parties not subject to liability in tort. *See Joe & Dan International Corp. v. U.S. Fidelity & Guaranty Co.,* 178 Ill.App.3d 741, 127 Ill.Dec. 830, 533 N.E.2d 912 (1st Dist.1988); *Cirilo's, Inc. v. Gleeson, Sklar & Sawyers,* 154 Ill.App.3d 494, 107 Ill.Dec. 417, 507 N.E.2d 81 (1st Dist.1987).[13] However, with due respect this court believes that the recent Illinois appellate court decision in *People v. Community Hospital of Evanston,* 189 Ill.App.3d 206, 136 Ill.Dec. 702, 545 N.E.2d 226 (1st Dist.1989) is more true to the Illinois Supreme Court's holding in *Doyle.*

In *Community Hospital of Evanston* the Illinois Attorney General brought suit alleging that both a member of the Community Hospital of Evanston's board of directors and a bank had wrongfully dissipated certain assets belonging to the hospital. Specifically, the complaint alleged that

---

13. The third party plaintiffs also cite *Riordan v. Smith Barney,* No. 84 C 3216, 1987 WL 12179 (N.D.Ill. June 9, 1987) (1987 U.S. Dist. LEXIS 4827). However, the court in *Riordan* denied the motion to dismiss the contribution claim at issue in part because the third-party plaintiff alleged that the third-party defendant from whom contribution was sought was liable to the original plaintiffs for legal malpractice—clearly a tort. *Id.,* 1987 WL 12179, 1987 U.S. Dist. LEXIS at 4–5. The court did not fully discuss the basis for the third-party plaintiff's liability to the original plaintiffs.

the director breached fiduciary duties and that the bank breached both fiduciary and statutory duties to the hospital. The court dismissed the director's cross-claim for contribution, noting that breach of a fiduciary duty was not a "tort" for purposes of the Contribution Act. *Id.,* 136 Ill.Dec. at 706, 545 N.E.2d at 230. The court held that regardless of their culpability neither the director nor the bank could be "subject to liability in tort," and thus as a matter of law the Contribution Act could not support the director's claim for contribution from the bank. *Id.,* 136 Ill.Dec. at 707, 545 N.E.2d at 231.

Likewise, because the third-party plaintiffs in this case can be liable to the Trustee only for breach of fiduciary duties, violation of federal and state fraudulent conveyance law, and violation of the improper distribution provision of the IBCA—none of which sound in tort—they too are not "subject to liability in tort" and thus have no right to contribution from the third-party defendants under the Illinois Contribution Act.

### b. Section 8.65 of the Illinois Business Corporation Act

■ The third-party plaintiffs next contend that their contribution claims are based upon Section 8.65 of the IBCA. Section 8.65 provides in pertinent part:

Any director against whom a claim is asserted for the improper distribution of assets of a corporation and who is held liable thereon, is entitled to contribution from the shareholders who *knowingly* accepted or received any such distribution in proportion to the amounts received by them respectively.

*Ill.Ann.Stat.* ch. 32, ¶ 8.65(d) (Smith–Hurd Supp.1989) (emphasis supplied). The third-party defendant shareholders argue that they did not "knowingly" receive an improper distribution and thus cannot be held liable for contribution under Section 8.65. They argue that the word "knowingly" as

used in Section 8.65 requires actual knowledge of the impropriety of a corporate distribution; the third-party plaintiffs contend that the word requires that the third-party defendants had only constructive knowledge of such a distribution.

The express language of Section 8.65 offers no guidance in resolving this dispute. Thus, this court must look to the intent of the Illinois Legislature in enacting Section 8.65.

For evidence of legislative intent supporting their contentions the shareholder third-party defendants note that Section 8.65(d)'s predecessor, section 42(h) of the Business Corporations Act of 1933, which has language virtually identical to Section 8.65(d), permitted a right to contribution only from shareholders who "knowingly accepted or received any such [improperly distributed] dividend or assets...." In commentary to section 42(h) of the Business Corporation Act of 1933 the Chicago Bar Association noted that "[t]he words 'knowingly accepted' refer to acceptance with knowledge *of the fact that the declaration of the dividend or of the distribution was improper."* *Ill.Bus.Corp.Act Ann.* § 42, at 170 (1934) (emphasis added).[14] Although this commentary lacks the force of official legislative history, nonetheless it offers enlightening interpretation of the IBCA by its draftsmen. More importantly, in this court's opinion it reflects the probable intent of the Illinois Legislature.

The Illinois Legislature passed the IBCA in 1983, comprehensively revising the Business Corporation Act of 1933. As already noted, however, the relevant language of Section 42(h) of the Business Corporation Act of 1933 remained virtually the same—an indication that the Illinois Legislature approved of the then prevailing interpretation.

Moreover, according to the Advisory Committee the 1983 Act was drafted so as

**14.** *See also* 1 *Ill.Bus.Corp. Act Ann.*2d ed. § 42, at 194 (1947) ("[t]he contribution to which the director affected is entitled is manifestly reimbursement by shareholders other than himself of such proportion of the claim as represents dividends or other distribution of assets accepted or received by them *with knowledge that the declaration of the dividend or the distribution of assets was improper"*) (emphasis added).

"to reflect current corporate law and practice[,] to facilitate corporate growth and investment," and to "enhanc[e] the business and economic climate in Illinois." Statement by the Secretary of State's Advisory Committee, "Overview of the Illinois Business Corporation Act of 1983," 64 *Chicago Bar Record* 344 (1983). However, imposing contribution liability upon shareholders who had no actual knowledge of the impropriety of a corporate distribution would dampen the willingness of investors to purchase corporate stock, thus stifling rather than fostering corporate growth in Illinois—a result which the Illinois Legislature could not have intended.

Thus, in the absence of contrary authority this court believes that Section 8.65(d) of the IBCA confers a right to contribution only from shareholders who actually knew that the distributions which they accepted or received were improper. The third-party plaintiffs have made no such allegation.[15] Therefore, Section 8.65 of the IBCA will not support the third-party plaintiffs' claims for contribution.[16]

#### c. The Illinois Fraudulent Conveyance Statute

■ A few of the third-party plaintiffs claim a right to contribution under the Illinois fraudulent conveyance statute, *Ill. Ann.Stat.* ch. 59, ¶ 4 (Smith–Hurd 1989). Like the Bankruptcy Code nowhere does this statute expressly provide a right to contribution. Moreover, in Illinois a right of action may be implied from a statute only "where it is consistent with the underlying purpose of the [statute] and necessary to achieve the aim of the legislation," or where the statute is enacted for the protection of a particular class of individuals. *Sawyer Realty Group, Inc. v. Jarvis Corp.*, 89 Ill.2d 379, 59 Ill.Dec. 905, 908, 432 N.E.2d 849, 852 (1982). As with the Bankruptcy Code, the underlying purpose of Illinois fraudulent conveyance law is to protect *unpaid creditors* from fraudulent transfers—not the *recipients* of fraudulently conveyed property. Therefore, because recognition of a right to contribution under the Illinois fraudulent conveyance statute would be inconsistent with the statute's underlying purpose and would frustrate rather than further its aims, there is no implied right to contribution under *Ill. Ann.Stat.* ch. 59, ¶ 4.[17]

#### d. Right to Equitable Apportionment

■ In a final desperate attempt to save their contribution claims, the third-party plaintiffs in their sur-reply brief raise for the first time the doctrine of equitable apportionment. However, the Contribution Act has long since extinguished actions for equitable apportionment in Illinois. *Mayhew Steel Products, Inc. v. Hirschfelder*, 150 Ill.App.3d 328, 103 Ill.Dec. 587, 589, 501 N.E.2d 904, 906 (5th Dist.1986); *Cleg-*

---

**15.** The third-party complaints allege only constructive knowledge—that the Wieboldt shareholders had knowledge of various facts relating to the LBO. For example, the Trump third-party complaint states that all Wieboldt shareholders were sent an "Offer to Purchase Shares" which stated that: (i) the Offer was being made pursuant to an Agreement and Plan of Reorganization between WSI and Wieboldt; (ii) Wieboldt had a recent history of operating losses and that absent the infusion of additional working capital, there would not be any foreseeable significant improvement in the financial condition of the company; (iii) WSI had been recently formed and had no earnings from operations or equity capital with which to make the required payments necessary under the Offer; (iv) WSI intended to borrow all of the $38.5 million necessary to purchase the shares tendered to it pursuant to the Offer, and that subsequent to the Offer, WSI would merge into Wieboldt; and (v) after the Offer substantially all of the assets of Wieboldt would be pledged as security for the loans incurred to finance the tender offer. (Trump TPC at ¶ 39; *see also,* Darrow TPC at Count V ¶ 4; Schottenstein TPC at ¶¶ 38, 74.) Nowhere do the third-party complaints allege that the shareholders knew that the distribution which they received would render Wieboldt insolvent or was otherwise improper.

**16.** Because the third-party complaints fail to sufficiently allege knowledge on behalf of the shareholder third-party defendants this court need not decide whether the shareholders received a "distribution" within the meaning of Section 8.65.

**17.** As the AMA/Cohen third-party defendants correctly note, the same reasoning negates any implied right of contribution in favor of the third-party plaintiffs under Section 9.10(c)(1) of the IBCA.

gett v. Zapianin, 187 Ill.App.3d 872, 135 Ill.Dec. 324, 325, 543 N.E.2d 892, 893 (1st Dist.1989). Thus, the third-party plaintiffs' untimely appeal to this doctrine fails as well.

Therefore, neither federal nor state law provides a basis for the third-party plaintiffs' contribution claims. Consequently, the third-party defendants' motions to dismiss all contribution claims asserted against them must be granted.

### C. *Third–Party Claims Against Laventhol and Horwath*

■ L & H faces and has moved to dismiss third-party claims not only for contribution (which must be dismissed for the reasons set forth above), but also for negligent misrepresentation and breach of contract. Because the court in its prior opinions has not detailed the facts relevant to L & H's motions to dismiss, it does so here. Of course, in ruling on L & H's motions to dismiss this court must presume as true all of the well-pleaded allegations of the third-party complaints. *Miree v. DeKalb County, Georgia,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977).

Prior to the Board's approval of WSI's tender offer on November 18, 1985, WSI engaged L & H to assist it both in obtaining financing for the acquisition of Wieboldt and in securing the Board's approval of the acquisition. Pursuant to this engagement L & H issued four written financial reports—one dated before the November 18, 1985 Board approval of WSI's tender offer, and three dated after approval of the tender offer but before completion of the LBO on December 20, 1985.

Between October and December 20, 1985 L & H met periodically with Wieboldt's President and Chief Executive Officer, David C. Keller and Wieboldt's Chief Financial Officer, Kenneth E. Rapacz. L & H informed Mr. Keller and Mr. Rapacz of Wieboldt's projected solvency after acquisition by WSI. At a meeting on November 18, 1985 Mr. Rapacz relied upon information provided by L & H in giving advise to the Board about Wieboldt's projected financial condition after acquisition by WSI.

That same day the Board approved WSI's proposed tender offer.

Pursuant to the tender offer Wieboldt's shareholders tendered 99% of Wieboldt's outstanding stock. By its own terms, however, the tender offer could not be completed unless funds were made available under certain loan commitments secured by WSI. As it turned out, WSI's lenders honored their loan commitments, but only after being provided certification of Wieboldt's financial condition—certification which expressly relied on financial reports provided by L & H.

Now, based on the financial information which L & H provided, Mr. Darrow, the Schottenstein third-party plaintiffs, and the Trump third-party plaintiffs have asserted third-party claims against L & H for negligent misrepresentation and breach of contract.

#### 1. Negligent Misrepresentation

L & H challenges the sufficiency of the negligent misrepresentation claims on three grounds.

First, L & H contends that the third-party complaints fail to allege actual reliance by the Board (and by extension all of the third-party plaintiffs asserting such claims) on its solvency opinions when the Board approved WSI's tender offer on November 18, 1985. However, the third-party complaints are replete with specific allegations of actual reliance:

(1) that L & H provided information from financial reports and opinions prepared by it to Mr. Rapacz (Darrow TPC at ¶¶ 11–12);

(2) that based upon financial information prepared by L & H Mr. Rapacz apprised the Board of Wieboldt's projected solvency (Darrow TPC at ¶ 13);

(3) that "in reliance, *inter alia,* upon Rapacz's report to the Board, which report was based upon information provided by Laventhol & Horwath, and upon the fact that HCFS would not provide financing to WSI, and GECC would not enter into the Accounts Purchase Agreement, unless they

each received a satisfactory solvency opinion from Laventhol & Horwath", the Board approved the plan of reorganization with WSI and recommended that Wieboldt's shareholders tender their shares to WSI (Darrow TPC at ¶¶ 14–16); and finally,

(4) that the director third-party plaintiffs would not have voted to approve the tender offer and the shareholder third-party plaintiffs would not have tendered their shares had L & H not rendered its solvency opinion (Darrow TPC at ¶ 21).[18]

These profuse allegations of actual reliance easily defeat L & H's motion to dismiss the negligent misrepresentation counts on this point.

L & H's second challenge to the negligent misrepresentation claims is that as a matter of law the Board could not have justifiably relied upon L & H's solvency opinions. In particular, L & H asserts that the Board had a non-delegable duty to conduct an independent investigation into Wieboldt's solvency. Additionally, L & H argues that the circumstances surrounding the tender offer preclude as a matter of law any finding of justifiable reliance.

Contrary to L & H's arguments, however, no case law supports the notion that the Board had a non-delegable duty of investigation which would preclude *as a matter of law* the third-party plaintiffs' actions for negligent misrepresentation.[19] Indeed, determination of whether a party has a right to rely on another's representations requires an examination of all of the circumstances of a transaction, *Soules v. General Motors Corp.*, 79 Ill.2d 282, 37 Ill.Dec. 597, 599, 402 N.E.2d 599, 601 (1980), and in most instances is a question of fact inappropriate for decision on a motion to dismiss.[20] *See HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 172 Ill.App.3d 718, 122 Ill.Dec. 725, 740, 527 N.E.2d 97, 112 (5th Dist.1988). Dismissal is especially inappropriate here, where the propriety of the Board's actions will be determined under the business judgment rule, *Treco, Inc. v. Land of Lincoln Savings and Loan*, 749 F.2d 374, 377 (7th Cir.1984), application of which also is a question of fact. *See FSLIC v. Musacchio*, 695 F.Supp. 1053, 1064 (N.D.Cal.1988). Thus, given the allegations of the third-party complaints at issue it cannot be said as a matter of law that the Board's reliance on L & H's opinions was unjustified so as to entitle L & H to dismissal of the negligent misrepresentation claims.[21]

18. Similar allegations appear in: the Schottenstein TPC at ¶¶ 29, 32–35, 52, 54; and the Trump TPC at ¶¶ 11–12, 14–17, 22.

19. L & H cites the Delaware Supreme Court decision in *Smith v. Van Gorkom*, 488 A.2d 858 (Del.1985) for the proposition that "[a] director's fiduciary duty 'requires more than the mere absence of bad faith or fraud;' he must actually exercise his duties, and must do so diligently, carefully, *and independently*." (L & H Mem. in Support at 14, emphasis added.) However, L & H mischaracterizes *Smith v. Van Gorkom;* nowhere did the court state that a director's duty of investigation is "independent" such that *as a matter of law* he or she cannot rely on the representations of others. On the contrary, the *Van Gorkom* court rendered its decision not upon a motion to dismiss, but rather based upon a full trial record. *Id.* at 871.

Similarly, the other case cited by L & H for the notion that the Board "was required to make an *independent* and reasonable inquiry" (L & H Mem. in Support at 15, emphasis added) into Wieboldt's solvency, *Treadway Companies, Inc. v. Care Corp.*, 638 F.2d 357, 384 (2d Cir.1980), in fact does not support that proposition. Indeed, the court in *Treadway* merely mentioned ap-

provingly that the board of directors in that case had engaged an investment banking firm to negotiate and help evaluate proposed mergers. The court in no way held as a matter of law that the board could not have relied upon representations made by third parties which the board had not hired.

20. L & H's appeal to *Teamsters Local 282 Pension Trust Fund v. Angelos*, 649 F.Supp. 1242 (N.D.Ill.1986) involved analysis of the right to rely at the summary judgment stage and thus is unhelpful in the context of on a motion to dismiss.

21. L & H has devoted much of its argument to matters which may be appropriate on a motion for summary judgment but are inappropriate on a motion to dismiss. For example, L & H contends that myriad "facts" culled from the exhibits attached to the third-party complaints preclude a finding of justifiable reliance. However, while this court must accept as true all of the well-pleaded allegations of the *complaint*, it need not dismiss a claim merely because *exhibits*—which were neither adopted by reference nor had any independent legal significance—

Finally, L & H seeks to dismiss the claims of negligent misrepresentation by arguing that it owed no duty of care to the third-party plaintiffs and thus as a matter of law could not be liable to them for any alleged misrepresentations. To adequately plead that L & H owed a duty of care to the third-party plaintiffs the third-party complaints must "allege facts showing that the purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff[s]." *Brumley v. Touche, Ross & Co.*, 139 Ill.App.3d 831, 93 Ill.Dec. 816, 819, 487 N.E.2d 641, 644 (2d Dist.1985).

The third-party plaintiffs have alleged that WSI retained L & H to assist it in securing the Board's approval of the acquisition of Wieboldt (Schottenstein TPC at ¶ 28), that Mr. Rapacz and Mr. Keller met with L & H as representatives of the Board (Schottenstein TPC at ¶ 32), that L & H knew that based on information it provided Mr. Rapacz would advise the Board concerning the effect of WSI's acquisition on Wieboldt's solvency (Schottenstein TPC at ¶ 33[ii]), that L & H knew that WSI would make the financial reports prepared by L & H available to the Board (Schottenstein TPC at ¶ 33[i]), and that the Board would rely upon the fact that L & H provided a satisfactory solvency opinion in determining that Wieboldt would remain solvent following the tender offer (Schottenstein TPC at ¶ 33[iii]).[22]

These allegations provide ample basis for a trier of fact to conclude that WSI—with L & H's knowledge—used statements by L & H to influence the third-party plaintiffs. Moreover, the third-party complaints sufficiently allege that L & H acted in such a way that the third-party plaintiffs reasonably could have concluded that L & H's representations had been made to them as well as to WSI. Thus, the third-party com-

plaints adequately allege that the purpose and intent of L & H's relationship with WSI was to benefit or influence the third-party plaintiffs, thereby defeating a motion to dismiss on this point. *See Frymire v. Peat, Marwick, Mitchell & Co.*, 657 F.Supp. 889, 897 (N.D.Ill.1987) (auditor owes a duty to others "only if the client uses the statement to influence a third party and the auditor knows of that use, and perhaps only if the auditor acts in such a way that the third party reasonably could conclude that a representation had been made to him as well a to the client").

Therefore, because it cannot be said "beyond doubt" that the third-party plaintiffs can prove "no set of facts" in support of their negligent misrepresentation claims which would entitle them to relief, L & H's motion to dismiss those claims must be denied. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### 2. Breach of Contract

Finally, L & H has moved to dismiss the breach of contract claims against it on the ground that as a matter of law the third-party plaintiffs were not third-party beneficiaries of its contract with WSI. However, to survive a motion to dismiss on this point the third-party complaints need only plead facts showing that L & H's contract with WSI was entered into with the intent of directly benefiting the third-party plaintiffs. *Midwest Concrete Products Co. v. LaSalle National Bank*, 94 Ill.App.3d 394, 49 Ill.Dec. 968, 969–970, 418 N.E.2d 988, 989–90 (1st Dist.1981). Moreover, the intent of the parties can only be gleaned from a consideration of all of the contract provisions and the circumstances surrounding the parties at the time of the contract's execution. *Wheeling Trust & Savings Bank v. Tremco Inc.*, 153 Ill.App.3d 136, 106 Ill.Dec. 254, 257, 505 N.E.2d 1045, 1048 (1st Dist.1987).

raise questions about the truth of certain allegations. *See General Accident Insurance Company of America v. Fidelity & Deposit Co.*, 598 F.Supp. 1223 (E.D.Pa.1984). Indeed, were L & H to move for summary judgment on the negligent misrepresentation claims this court would be compelled to view the evidence in the light most favorable to the third-party plaintiffs. *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570

(7th Cir.1989). It would be absurd to consider the "evidence" in a less favorable light on a motion to dismiss.

**22.** The other relevant third-party complaints make similar allegations. *See* Darrow TPC at ¶¶ 11–17, 19–21; Trump TPC at ¶¶ 12–18, 20–22.

As already noted, the third-party plaintiffs have alleged that L & H was retained for the purpose of securing the Board's approval of the tender offer, that L & H met with Mr. Rapacz and Mr. Keller knowing that they would report information prepared by it to the Board, and thus that the agreement between WSI and L & H was made for the benefit of the third-party plaintiffs.[23] These allegations adequately plead that L & H and WSI contracted with the intent of directly benefiting the third-party plaintiffs. Therefore, L & H's motion to dismiss the breach of contract claims also must be denied.[24]

### D. *The Fraud Claims and Rule 9(b)*

■ In a final challenge to the third-party complaints the WSI third-party defendants argue that the fraud claims asserted against them[25] must be dismissed for failure to comply with Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "all averments of fraud [and] the circumstances constituting fraud [be] stated with particularity." *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir.1989). The WSI defendants' sole objection under Rule 9(b) is that the third-party complaints fail to distinguish the role that each WSI third-party defendant played in the alleged fraud.

However, both the Schottenstein and Trump third-party complaints specifically identify the misrepresentations allegedly made in connection with WSI's proposed tender offer by WSI's president Gilbert K. Granet. (Schottenstein TPC at ¶ 26; Trump TPC at ¶ 28.) Thus, both of these third-party complaints plead fraud against Mr. Granet with sufficient particularity.

The Schottenstein and Trump third-party complaints also assert fraud claims against the corporations that Mr. Granet controlled when he made the alleged misrepresentations at issue. Specifically, the Schottenstein third-party plaintiffs name WSI, and the Trump third-party plaintiffs name WSI, WSI Investors Corp., and Gilbert K. Granet, Inc. (Schottenstein TPC, Count IV; Trump TPC, Count III.) As the third-party plaintiffs correctly note, the degree of particularity required under Rule 9(b) depends to a degree upon the nature of the scheme alleged and the type of parties being sued. *Frymire*, 657 F.Supp. at 894. Because statements made by Mr. Granet in his capacity as president of WSI could be attributed to WSI, WSI Investors Corp., and Gilbert K. Granet, Inc., the Schottenstein and Trump third-party complaints plead fraud with sufficient particularity against those three corporate defendants as well. *Pirtle v. Gilman*, Fed.Sec.L.Rep. (CCH) ¶ 93,193 at 95,891, 1987 WL 6614 (N.D.Ill. 1987); *see* Trump TPC at ¶ 8 (alleging that Mr. Granet owned and controlled WSI through WSI Investors Corp. and Gilbert K. Granet, Inc.).

The Schottenstein third-party complaint asserts fraud claims only against Mr. Granet and WSI. Thus, it fully comports with Rule 9(b). However, in addition to the parties already discussed the Trump third-party complaint names several other individual WSI third-party defendants.[26] The Trump third-party complaint fails to at-

**23.** Darrow TPC at ¶¶ 7–8, 11–12, 25; Schottenstein TPC at ¶¶ 28–29, 32–33, 58; Trump TPC at ¶¶ 8–9, 12–13, 26.

**24.** Citing *Wheeling Trust & Savings Bank v. Tremco, Inc.*, 153 Ill.App.3d 136, 106 Ill.Dec. 254, 505 N.E.2d 1045 (1st Dist.1987) and *Illinois Housing Dev. Authority v. Sjostrom & Sons, Inc.*, 105 Ill.App.3d 247, 61 Ill.Dec. 22, 433 N.E.2d 1350 (2d Dist.1982) L & H argues that despite these allegations this court nonetheless should dismiss the breach of contract claims against L & H. However, in both *Wheeling Trust* and *Illinois Housing* the trial courts conducted full hearings before holding that certain parties were not intended beneficiaries under the contracts at issue. 106 Ill.Dec. at 256, 505 N.E.2d at

1047; 61 Ill.Dec. at 251, 433 N.E.2d at 1354. Thus, instead of supporting L & H's argument, *Wheeling Trust* and *Illinois Housing* further convince this court that given the allegations presented, the issue of whether the third-party plaintiffs are third-party beneficiaries under the L & H—WSI contract cannot be decided on a motion to dismiss—where the court can look only to the pleadings for guidance.

**25.** Only the Darrow, Schottenstein, and Trump third-party complaints assert such claims.

**26.** In particular: Christopher Jansen, Bernard Krakower, Stanley Seiden, David E. Babcock, George P. Kelly, and John H. Sheperd. (Trump TPC at ¶¶ 9, 59–63.)

tribute particular misrepresentations to any of these third-party defendants; only Mr. Granet's representations are identified. Moreover, the Trump third-party complaint alleges that these additional individual third-party defendants did not serve as directors or officers of Wieboldt until *after completion* of the tender offer—an allegation which would not justify attributing to them representations made by Mr. Granet *before commencement* of the tender offer. (Trump TPC at ¶¶ 9, 28, 34.)

As the court warned in *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927 (N.D.Ill.1985):

> The identity of those making the misrepresentations is crucial. Courts have been quick to reject pleadings in which multiple defendants are "lumped together" and in which "no defendant can determine from the complaint which of the alleged representations it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given...."

*Id.* at 931, *quoting Lincoln National Bank v. Lampe*, 414 F.Supp. 1270, 1279 (N.D.Ill.1976). Because they fail to adequately identify which third-party defendants made which representations, the Trump third-party complaint's fraud counts (Counts III and VI) must be dismissed under Rule 9(b) as to all defendants except Mr. Granet, WSI, WSI Investors Corp. and Gilbert K. Granet, Inc.

 Unlike the Schottenstein and Trump third-party complaints, however, the allegations of fraud in the Darrow and Podesta third-party complaints must be dismissed altogether for failure to plead fraud with particularity. Neither of these third-party complaints attribute the alleged misrepresentations to any individuals whatsoever—they merely allege that "WSI" made them all. (Darrow TPC, Count II, ¶ 6; Podesta TPC, Count II, ¶ 6.) Additionally, the Darrow and Podesta third-party complaints aver only that the individual WSI third-party defendants were "affiliated with WSI prior to its acquisition of Wieboldt." (Darrow TPC, Count I, ¶ 2; Podesta TPC, Count I, ¶ 2.) This "affiliation" is insufficient to warrant attributing the alleged misrepresentations to the individual WSI third-party defendants.

Therefore, because the Darrow and Podesta third-party complaints do not adequately inform the third-party defendants of the fraudulent acts of which Mr. Darrow and Mr. Podesta complain, the third-party defendants cannot possibly prepare an effective response and defense. Thus, the fraud counts in the Darrow and Podesta third-party complaints (Count II in each complaint) must be dismissed altogether under Rule 9(b).

## III. CONCLUSION

Therefore, for the reasons stated in this memorandum opinion and order:

(1) the Third–Party Complaint of William W. Darrow against WSI Liquidation Trust, *et al.*, is DISMISSED in its entirety;

(2) Count III of the Third–Party Complaint of William W. Darrow Against Laventhol & Horwath is DISMISSED; Laventhol & Horwath's motion to dismiss Counts I and II of Mr. Darrow's third-party complaint against it is DENIED;

(3) the Third–Party Complaint of Robert A. Podesta is DISMISSED in its entirety;

(4) the Third–Party Complaint of Harry L. Henning and Porter, Wright, Morris & Arthur is DISMISSED under Federal Rule of Civil Procedure 41(c) without costs;

(5) Counts III, V, VI, VII and VIII of the Schottenstein Third–Party Complaint are DISMISSED; the motions to dismiss Counts I, II and IV of the Schottenstein Third–Party Complaint are DENIED;

(6) Counts I, II, IV, V, VII, VIII, IX, X, XI, XII, XIII, and XIV of the Trump Third–Party Complaint against WSI Liquidation Trust, *et al.*, are DISMISSED; Counts III and VI of the Trump Third–Party Complaint are DISMISSED as to all third-party defendants EXCEPT Gilbert K. Granet, Gilbert K. Granet, Inc., WSI Liqui-

dation Trust, and WSI Investors Corp.;

(7) Count III of the Corrected Third–Party Complaint of Julius Trump, Edmond Trump, MBT Corporation, James M. Jacobson and Albert Roth Against Laventhol & Horwath is DISMISSED; Laventhol & Horwath's motion to dismiss Counts I and II of this complaint is DENIED.