(No. 67169.—

PHYLLIS C. KINZER, a taxpayer on behalf of and for the benefit of the City of Chicago, Appellee, v. THE CITY OF CHICAGO *et al.*, Appellants.

*Opinion filed April 20, 1989.—Rehearing denied June 28, 1989.*

438

Alan R. Borlack, of Gordon & Glickson, P.C., of Chicago, for appellant City of Chicago.

Ellen G. Robinson and Alan F. Curley, of Kahn, Robinson & Curley, of Chicago, for appellant Daniel Grim.

Robert S. Atkins and Robert E. Williams, of Robert S. Atkins & Associates, and Terrance A. Norton, all of Chicago, for appellee.

Richard S. Wisner, T. Scott Leo and Scott O. Reed, of Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, of counsel), for *amicus curiae* American Insurance Association.

Thomas W. Kelty, of Pfeifer & Kelty, P.C., of Springfield, for *amicus curiae* Illinois Municipal League.

Lee J. Schwartz, of Sidley & Austin, of Chicago, for *amici curiae* Illinois Government Finance Officers' Association and Northwest Municipal Conference.

CHIEF JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Phyllis Kinzer, filed her verified fourth amended complaint in the circuit court of Cook County pursuant to section 1—5—1 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1985, ch. 24, par. 1—5—1) seeking to obtain declaratory relief, injunctive relief and to recover damages on behalf of and for the benefit of the City of Chicago against defendants, the City of Chicago (City) and Daniel Grim (Grim) *et al.* The circuit court granted Grim's cross-motion for summary judgment and denied plaintiff's

motion for summary judgment against both Grim and the City. Plaintiff appealed.

On appeal, the appellate court reversed, finding that: (1) the expenditures made by Grim without prior appropriation violated section 8—1—7 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7); (2) Grim was not protected by the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*); (3) Grim would be held to a strict liability standard of care; and (4) the doctrine of *res judicata* was inapplicable in the present action. (169 Ill. App. 3d 447.) The case comes before this court on a certificate of importance issued by the appellate court (107 Ill. 2d R. 316).

The issues presented for review are: (1) whether the expenditures made by Grim without prior appropriation violated section 8—1—7 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7); (2) if so, whether Grim is protected by the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*); (3) if not, whether Grim should be held to a strict liability standard of care; and (4) whether the doctrine of *res judicata* bars the present action.

This case arises out of the conduct of several city officials who, without receiving prior appropriations from the city council, entered into contracts and incurred expenses relating to various special events which were held between 1978 and 1983. We summarize the facts which are pertinent to the present action.

In 1978, the City began sponsoring summer entertainment festivals known as "ChicagoFest." At that time, the City maintained the Municipal Hotel Operators Tax Fund (Fund 355) which was used to "promote tourism, conventions and other special events" pursuant to section 8—3—14 of the Code (Ill. Rev. Stat. 1977, ch. 24, par. 8—3—14). The city council annually approved use of the money in Fund 355 for the promotion of tourism, conventions and other special events.

That same year, Clark Burrus, then city comptroller, set up a new "Trust and Agency Fund" (Fund 666), as a

separate part of Fund 355, to account for ChicagoFest receipts and expenditures. In order to finance the 1978 ChicagoFest, money was transferred from Fund 355 to the newly established Fund 666. Expenses from the 1978 ChicagoFest were charged to Fund 666. However, the 1978 ChicagoFest lost money and, consequently, Fund 666 showed a deficit which was charged to Fund 355.

In 1979, money from Fund 355 was again transferred to Fund 666 to finance the 1979 ChicagoFest. Expenses from the 1979 ChicagoFest were also charged to Fund 666. However, the 1979 ChicagoFest made a profit. These profits were not used to reimburse Fund 355, but remained in Fund 666. Later that year, Fund 666 was reclassified as the "ChicagoFest Special Revenue Fund" by Raymond Coyne, who succeeded Burrus as city comptroller.

On July 8, 1980, Grim succeeded Coyne as city comptroller. Prior to Grim's assumption of the comptroller's duties, the mayor's office of special events decided to sponsor additional special events, because of the popularity of ChicagoFest. On October 2, 1980, Grim executed a contract with Festivals, Inc., to manage a special event to be held in fall 1980. Grim followed the practice established by his predecessors and charged expenditures relating to the 1980 ChicagoFest, as well as expenditures relating to the other 1980 special events, including the October 2, 1980, contract with Festivals, Inc., to Fund 666.

On February 10, 1981, Grim executed a contract engaging Festivals, Inc., to manage the 1981 ChicagoFest and three other special events which would be held in 1981. On March 10, 1981, Grim reclassified Fund 666 as a "Special City Programs Fund" in order to indicate that it was now accounting for all special events. Grim again charged expenditures relating to all of the 1981 special events, including the February 10, 1981, contract with Festivals, Inc., to Fund 666.

Each of the contracts Grim executed with Festivals, Inc., was approved as to form and legality by the City's

corporation counsel and each contract contained a clause limiting payment to available money in Fund 666.

On September 29, 1981, Grim left the comptroller's office. Shortly thereafter, the comptroller's report of December 31, 1981, was issued. The report reflected a deficit in Fund 666 as special event expenditures exceeded special event income. That same day, December 31, 1981, Grim's successor charged the deficit in Fund 666 to the City's corporate fund.

From its inception in 1978 until February 23, 1983, Fund 666 was used to finance contracts and expenses for a variety of special events. However, the city council *never* appropriated money to Fund 666 during that period.

On August 2, 1982, plaintiff filed her initial complaint seeking declaratory relief and injunctive relief and to recover funds expended by the City for special events against then Mayor Jane Byrne, then purchasing agent James Arnold, Festivals, Inc., and the City. Plaintiff alleged that the expenditures relating to special events violated section 8—1—7 of the Code (Ill. Rev. Stat. 1981, ch. 24, par. 8—1—7), because money had never been appropriated by the city council to cover these expenditures.

On February 23, 1983, the City, Byrne and Arnold agreed to an injunctive order which permanently enjoined them from entering into further contracts and making further expenditures for special events without first obtaining appropriations from the city council. The permanent injunction was the product of a stipulation between plaintiff, the City, Byrne and Arnold.

On August 18, 1983, plaintiff filed her verified second amended complaint naming additional parties including, among others, Grim. Two years later, on October 14, 1985, plaintiff filed her verified fourth amended complaint, which resulted in the instant action. Counts II and VI of plaintiff's verified fourth amended complaint allege breach of fiduciary duty and conspiracy against Grim and request that he be ordered to reimburse the

City in the amount of the allegedly illegal expenditures for special events.

On August 1, 1986, the circuit court granted Grim's cross-motion for summary judgment, having concluded that Fund 666 was a "special revenue fund." The circuit court held that, as a special revenue fund, Fund 666 was not subject to prior appropriation and, consequently, the expenditures for special events made by Grim were legal. The circuit court also denied plaintiff's motion for summary judgment against the City on her declaratory judgment count and against Grim as to liability. On August 20, 1986, the circuit court issued a written order memorializing its August 1, 1986, ruling.

On September 11, 1986, plaintiff moved to strike the findings of fact and conclusions of law contained in the circuit court's written order and for reconsideration and vacation of that order. On November 3, 1986, the circuit court issued a modified order granting Grim's cross-motion for summary judgment and denying plaintiff's motion for partial summary judgment against both Grim and the City. In its order, the circuit court found that all matters "relating to the remaining defendants, counts or causes of·actions [sic] are stayed pending the disposition of the imminent appeal from this order or the further order of this court." Accordingly, at this time, the only parties to the present action are plaintiff, Grim and the City. The City's sole interest in the present action pertains to the standard of care which is applicable to Grim.

The first issue presented for review is whether the expenditures made by Grim without prior appropriation violated section 8—1—7 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7). Section 8—1—7 provides in part:

> "No contract shall be made by the corporate authorities, or by any committee or member thereof, and no expense shall be incurred by any of the officers or departments of any municipality, whether the object of the expenditure has been ordered by the corporate authorities or not, unless an appropriation has been previously made concerning that contract or expense. Any contract made,

or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof." Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7.

Grim contends that an exception to this prior-appropriation rule exists and a municipality or its agents can execute contracts or incur expenses without prior appropriations when a contract price or an incurred expense is paid out of a special fund. (*Branigar v. Village of Riverdale* (1947), 396 Ill. 534, 543-46; *Simpson v. City of Highwood* (1939), 372 Ill. 212, 218-21.) A special fund is a "segregation of income which never becomes a part of the general fund." (*Branigar*, 396 Ill. at 545.) A closer reading of *Branigar* reveals, however, that the exception to the prior-appropriation rule exists only when payment of the contract price or incurred expense is *limited* to a special fund and such payment does not otherwise become an obligation of the municipality. *Branigar*, 396 Ill. at 544.

The special-fund exception to the prior-appropriation rule does not apply in the present case, as there is no doubt that on December 31, 1981, Fund 666 had a deficit which was charged to the City's corporate fund. Thus, the expenditures made by Grim without prior appropriation became an obligation of the City and violated section 8—1—7 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7).

The next issue presented for review is whether Grim is protected by the Tort Immunity Act (Ill. Rev. Stat. 1985, ch. 85, par. 1—101 *et seq.*). The appellate court held that the Tort Immunity Act did not apply to the present action, because plaintiff sued in equity by bringing an action pursuant to section 1—5—1 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 1—5—1). Section 1—5—1 provides in part:

"A suit may be brought by any taxpayer, in the name and for the benefit of the municipality, against any person to recover any money or property belonging to the municipality, or for any money which may have been paid,

expended, or released without authority of law." Ill. Rev. Stat. 1985, ch. 24, par. 1—5—1.

The appellate court's conclusion that plaintiff sued in equity by bringing an action pursuant to this section of the Code is erroneous, because section 1—5—1 merely provides standing for taxpayers to bring suit in the name of and for the benefit of the municipality. (*City of Chicago ex rel. Konstantelos v. Duncan Traffic Equipment Co.* (1983), 95 Ill. 2d 344, 352-54.) Thus, the proper determination is whether the cause of action stated in plaintiff's complaint against Grim sounds in tort.

Count II of plaintiff's verified fourth amended complaint against Grim alleges breach of fiduciary duty. Grim argues that breach of fiduciary duty is a tort (Restatement (Second) of Torts §874 (1979)) and that the Tort Immunity Act is applicable in the present action. This court has not accepted the Restatement (Second) of Torts view but has regarded breach of fiduciary duty as controlled by the substantive laws of agency, contract (*City of Chicago ex rel. Cohen v. Keane* (1976), 64 Ill. 2d 559, 565-68 (restitution is proper remedy for breach of fiduciary duty); see also *United States v. Carter* (1910), 217 U.S. 286, 306, 54 L. Ed. 769, 775-76, 30 S. Ct. 515, 520) and equity (*People ex rel. Daley v. Warren Motors, Inc.* (1986), 114 Ill. 2d 305, 315).

This does not, however, conclude our discussion of immunity, because Illinois recognizes the common law public official immunity doctrine, notwithstanding the Tort Immunity Act. (*Mora v. State of Illinois* (1977), 68 Ill. 2d 223, 233-34; *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 502.) The common law public official immunity doctrine provides that "a public officer is immune from individual liability for the performance of discretionary duties in good faith." (*Briceland*, 65 Ill. 2d at 502.) Although the expenditures made by Grim violated section 8—1—7 of the Code, he had no reason to believe that these expenditures were illegal, because he followed the practice established by his predecessors and charged

the expenditures relating to special events to Fund 666 which had been designated as a "Special Revenue Fund" by his predecessor. Moreover, Grim had the city's corporation counsel approve the form and legality of the Festivals, Inc., contracts he executed. Grim's official conduct in entering into contracts, incurring expenses and charging these expenditures to Fund 666 clearly fall within the boundaries of the common law public official immunity doctrine.

Since Grim is immune from liability, we need not address the third issue regarding whether Grim should be held to a strict liability standard of care.

The final issue presented for review is whether the doctrine of *res judicata* bars the present action. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Catlett v. Novak* (1987), 116 Ill. 2d 63, 67; *State Bank v. A-Way, Inc.* (1987), 115 Ill. 2d 401, 409.

Grim contends that the February 23, 1983, stipulation between plaintiff, the City, Byrne and Arnold and the resulting injunctive order have a *res judicata* effect on the present action against him, because he is a privy of the City. Grim's contention is erroneous, because there is no subsequent action, as the present action is merely a continuation of the action which produced the stipulation and injunctive order. Moreover, the present action pertains to liability while the stipulation and injunctive order prohibit the City, Byrne, Arnold and their privies from making prospective expenditures for special events without first obtaining appropriations from the city council. Thus, the doctrine of *res judicata* does not bar the present action.

Three motions were taken with this case. The first motion is by the Board of Trustees of Community College District No. 508 (Board) to file an *amicus curiae* brief in support of Grim. Supreme Court Rule 345(b)

provides that an *amicus curiae* brief "shall be filed on or before the due date of the initial brief of the party whose position it supports." (107 Ill. 2d R. 345(b).) Grim's brief was due and filed on August 11, 1988. The Board's motion was filed 2½ months later on October 25, 1988. The Board's motion is denied as it was filed in an untimely manner. 107 Ill. 2d R. 345(b).

The second motion is by plaintiff to dismiss the City as a party appellant in the present action. Plaintiff's motion is conditionally supported by Grim and opposed by the City. As the City's sole interest in the present action pertains to the standard of care which is applicable to Grim and such issue was not addressed, because Grim is immune from liability, the motion is granted.

The final motion is by Grim to strike allegedly prejudicial portions of both plaintiff's brief and the appendix to that brief. The trial court did not rule on this motion, the appellate court did not consider the subject materials and this court's determination of the issues was not prejudiced by these materials. Based on the foregoing and the fact that we have held that Grim is immune from liability, we decline to address this motion.

For the reasons stated above, we affirm as modified the appellate court's findings that the expenditures made by Grim without prior appropriation violated section 8—1—7 of the Code and that the doctrine of *res judicata* is inapplicable in the present action; we reverse the appellate court's finding that Grim was not immune from liability. This case is remanded to the circuit court for proceedings consistent with this opinion.

*Appellate court affirmed in part and reversed in part; circuit court reversed; cause remanded.*

WARD, CLARK and STAMOS, JJ., took no part in the consideration or decision of this case.