KIM MARIE GIORDANO, f/k/a Kim Marie Qualls, Plaintiff-Appellant, v. JULIE MORGAN *et al.*, Defendants-Appellees.

Second District   No. 2—89—0947

Opinion filed May 9, 1990.—Rehearing denied June 4, 1990.

Michael D. Canulli, of Oak Brook, for appellant.

Marilyn D. Woehrel, of Woehrel & Woehrel, of Westmont (Michael J. Smith, of counsel), for appellees.

JUSTICE INGLIS delivered the opinion of the court:

On December 13, 1985, plaintiff, Kim Giordano, filed a 10-count complaint against the following defendants: Julie Morgan, Gary Morgan, Kenneth G. Olson, Kenneth G. Olson & Associates, General Casualty Company of Illinois, KFS James, Inc., State Security Insurance Company, and the Friedberg Agency. In the complaint, plaintiff alleged that on October 26, 1984, she purchased a new 1985 Honda CRX. She maintained that she contacted Olson & Associates, insurance brokers, to procure a policy of automobile insurance. Through KFS-James, Olson & Associates procured insurance for plaintiff with General Casualty. Plaintiff alleged that, prior to October 31, 1984, she mailed her insurance premium check to General Casualty, but on December 15, 1984, plaintiff received two notices of cancellation from General Casualty. One notice stated that effective December 21, 1984, her policy was being cancelled for "non-payment of premium." The other notice stated that, effective January 16, 1984, plaintiff's policy was being cancelled for "Motor Vehicle History Violation." Plaintiff alleged that upon receiving the notices she spoke with Kenneth Olson, who informed her that the cancellation notice for nonpayment of premium was sent in error and advised her to disregard it.

Plaintiff alleged that on December 15, 1984, the date when plaintiff was notified by General Casualty that her policy would be cancelled, plaintiff requested Kenneth Olson and Olson & Associates to procure replacement insurance with another company to provide the same coverage afforded by the General Casualty policy. Plaintiff alleged that on December 29, 1984, she was informed by Olson and Olson & Associates that Olson had procured the requested insurance with State Security through its agent, Friedberg Agency.

Subsequently, on January 4, 1985, plaintiff's automobile was rearended by an automobile driven by Julie Morgan. Julie jointly owned the vehicle with her husband, Gary. Plaintiff maintained that as a result of the rear-end collision, she sustained personal injury, incurred medical expenses, lost her employment and sustained damage to her automobile. Thus, count I of plaintiff's complaint was titled "Negligence" and was brought against the Morgans seeking recovery for the alleged damages.

General Casualty was named as a defendant in count II of the complaint, which was titled "Declaratory Judgment." Plaintiff alleged that at the time of the January 4, 1985, accident, defendant Julie Morgan was an uninsured motorist as defined by General Casualty's policy. However, upon notifying General Casualty of the accident, plaintiff was informed that there was no insurance in effect on the date of the collision. Plaintiff alleged that she had a reasonable expectation of insurance coverage by General Casualty on January 4, 1985, and if there were any acts or omissions by plaintiff relating to nonpayment of her insurance premium they were "caused by and attributable to the negligence, instructions and representations of General Casualty's agents, Olson and Olson & Associates and or by the negligence of General Casualty." Plaintiff asked the court to declare the rights and liabilities of the parties under the policy; to enter a finding that General Casualty be required to honor their policy; to find that the policy issued is primary coverage as to any loss arising from the accident; and to award all attorney fees and costs incurred and other relief the court deemed just.

Count III of the complaint was titled "Breach of Contract" and was also brought against General Casualty. Substantially the same allegations were made in count III as were made in count II. Plaintiff claimed that she paid her premium and General Casualty breached their policy by denying coverage to plaintiff.

In count IV of the complaint, which was titled "Declaratory Judgment," plaintiff named State Security as a defendant. Plaintiff alleged that after the January 4, 1985, accident, she telephoned Olson and

Olson & Associates to report the accident. They then, in turn, allegedly notified State Security. Plaintiff alleged that she received a letter dated March 5, 1985, from State Security retroactively reducing her coverage on the date of the accident. Plaintiff asked the court to declare the rights and liabilities of the parties under the State Security policy; to find that State Security be required to provide insurance to plaintiff covering the January 4, 1985, accident in the same amount as provided in the General Casualty policy; to award plaintiff all attorney fees and costs incurred and other relief as the court deems just.

Count V was also brought against State Security and was titled "Breach of Contract." The same allegation made in count IV was substantially made in count V. Plaintiff alleged that she performed all conditions by her to be performed and State Security breached its contract of insurance by refusing to provide the agreed upon insurance and by refusing to handle her claim promptly and properly.

Kenneth G. Olson and Kenneth G. Olson & Associates were named as defendants in count VI, which was titled "Negligence." In sum, plaintiff alleged that Olson and Olson & Associates acted negligently in procuring and handling the insurance policies from General Casualty and State Security.

Count VII was also brought against Olson and Olson & Associates and was titled "Fraud." Plaintiff alleged that various material misrepresentations were made to her by Olson and Olson & Associates regarding her insurance coverage with General Casualty and State Security. Plaintiff sought actual and punitive damages and attorney fees and costs.

Count VIII, titled "Breach of Fiduciary Duty," was also brought against Olson and Olson & Associates. Plaintiff alleged that she "placed her entire trust, confidence and skill in the advice, instructions, representations and expertise of Kenneth Olson and Olson & Associates thereby creating a fiduciary duty of loyalty, good faith and fair dealings." Plaintiff claimed that that duty was breached by Olson and Olson & Associates in procuring and handling the insurance policies of General Casualty and State Security.

KFS James Agency, Inc., was named as a defendant in count IX of the complaint, which was titled "Negligence." Plaintiff alleged that Kenneth Olson and Olson & Associates caused her application for insurance with General Casualty to be "prepared, submitted, accepted, processed or otherwise considered through KFS-James." Plaintiff claimed that KFS-James acted negligently with respect to the handling of the General Casualty policy, which resulted in the denial of her coverage.

Count X was brought against Friedberg Agency, Inc., and was also titled "Negligence." Plaintiff alleged that Kenneth Olson and Olson & Associates caused her application for insurance with State Security to be "submitted, accepted, processed or otherwise considered through the Friedberg Agency." Plaintiff claimed that Friedberg acted negligently with regard to the State Security policy which resulted in plaintiff receiving less coverage than she was allegedly entitled to receive.

An additional count against Olson and Olson & Associates was added to the complaint on May 20, 1986, by way of amendment. Specifically, count XI was added wherein plaintiff alleged that the conduct of Olson and Olson & Associates constituted a deceptive act or practice within section 2 of the Consumer Fraud and Deceptive Business Practices Act (Act) (Ill. Rev. Stat. 1985, ch. 121½, par. 262). Pursuant to sections 10 and 10a of the Act (Ill. Rev. Stat. 1985, ch. 121½, pars. 270, 270a), plaintiff sought to recover actual damages, reasonable attorney fees and costs incurred.

Thereafter, plaintiff entered into pretrial settlements with each of the named defendants except Julie and Gary Morgan. Specifically, plaintiff settled with General Casualty for the sum of $3,000; with KFS-James for $1,500; with Kenneth G. Olson, individually, and Kenneth J. Olson & Associates for $24,000; with Friedberg for $750; and with State Security for $8,500. Thus, the sum total of the pretrial settlements amounted to $37,750.

On May 1, 1989, the Morgans and plaintiff proceeded to trial under count I of plaintiff's complaint. The jury returned a verdict on May 3, 1989, finding for plaintiff and against the Morgans. Damages were assessed in the amount of $16,392. Thereafter, the court entered judgment on the verdict.

On May 12, 1989, the Morgans filed a post-trial motion to reduce judgment on the verdict. Defendants argued that section 2 of the Contribution Act Among Joint Tortfeasors (Contribution Act) (Ill. Rev. Stat. 1987, ch. 70, par. 302) applied to the case at bar in that the good-faith settlements made in the amount of $37,750 should be set off against the jury verdict of $16,392, resulting in the judgment against defendants being reduced to zero. The trial court granted defendants' motion on July 25, 1989, finding that plaintiff suffered one indivisible injury as a result of the accident on January 4, 1985, and that the good-faith settlements made by the codefendants relate to this one indivisible injury. Thus, the trial court ordered the requested setoff. Plaintiff's motion to reconsider was denied, and plaintiff filed this timely appeal.

■ On appeal, plaintiff raises one issue: whether the trial court erred in applying the Contribution Act to the case at bar. This issue revolves around the language of the Contribution Act itself. Specifically, section 2(c) provides:

"When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons *liable in tort arising out of the same injury* or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 70, par. 302(c).

In applying the language of section 2(c) to the case at bar, we must first consider whether all the codefendants were liable in tort, and second, whether their liability arose out of the same injury. If the parties are not subject to liability in tort for the plaintiff's injuries at issue in the underlying action, there is no right of contribution between those parties. (*People ex rel. Hartigan v. Community Hospital* (1989), 189 Ill. App. 3d 206, 212.) Here, the Morgans were clearly liable in tort; however, it is unclear as to whether the remaining defendants were similarly liable. Both counts against General Casualty and State Security appear to have been based upon breach of contract. While that is certainly a nontort theory, it is not determinative as to whether the parties might also be "subject to liability in tort" for purposes of contribution. *Joe & Dan International Corp. v. United States Fidelity & Guaranty Co.* (1988), 178 Ill. App. 3d 741, 750.

■ In *Joe & Dan International*, the plaintiff sued its insurance broker, the insurance company and the agent of the insurance company for failure to provide insurance. Thereafter, the defendant agent sought contribution against the defendant insurance company, which the trial court denied because plaintiff's causes of action sounded in contract rather than tort. The Appellate Court for the First District reversed, finding that the theory under which the plaintiff sued the defendants was not dispositive as to whether both might be subject to liability in tort to plaintiff for the same injury for purposes of contribution between them. (*Joe & Dan International*, 178 Ill. App. 3d at 750.) The court explained:

" '[L]iability in tort,' governing the right of contribution among tortfeasors [citation], has been construed to mean 'potential' tort liability. As such, it is determined at the time of

the injury to the plaintiff seeking to hold liable under some theory, not necessarily a tort theory, less than all parties who were potentially liable therefor. [Citation.] In other words, 'the Contribution Act focuses *** on the culpability of the parties rather than the precise legal means by which the plaintiff is ultimately able to make each defendant compensate him for his loss.' [Citation.] Finally, we believe that [the insurance company], as well as [the insurance agent], was clearly 'potentially' liable in tort to plaintiff." *Joe & Dan International*, 178 Ill. App. 3d at 750.

Therefore, even though plaintiff in the case at bar sued General Casualty and State Security under nontort theories, both were potentially liable to plaintiff in tort for purposes of the "liable in tort" requirement of contribution.

■ As for KFS-James and Friedberg, both were sued under negligence theories and, thus, were clearly subject to liability in tort. Kenneth Olson and Olson & Associates were also sued under a negligence theory; however, they were additionally sued for fraud and breach of fiduciary duty. While "fraud" is a tort, it is an intentional tort, which our supreme court has recently held is not covered by the Contribution Act. (*Gerill Corp. v. Jack L. Hargrove Builders, Inc.* (1989), 128 Ill. 2d 179, 201-06.) Similarly, one liable for breach of fiduciary duty is not "liable in tort" under the Contribution Act (*People ex rel. Hartigan v. Community Hospital* (1989), 189 Ill. App. 3d 206, 213) because our supreme court has held that breach of fiduciary duty is not a tort under Illinois precedent; rather, it is controlled by the substantive laws of agency, contract and equity. (*Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, 445.) Therefore, given that Kenneth Olson and Olson & Associates are not "potentially liable in tort" for all three counts alleged against them, we must consider the application of the Contribution Act to a party who is only partially liable in tort.

■ The record reveals that Olson agreed to pay plaintiff $24,000 to settle the claims against him. However, the proceeds of the settlement were not allocated among the three counts against Olson and Olson & Associates. This fact alone does not prevent the Contribution Act from applying. Our supreme court has determined that an allocation of settlement proceeds between alternative theories of recovery asserted by a plaintiff against a defendant is not expressly required by the Contribution Act. (*Hall v. Archer-Daniels-Midland Co.* (1988), 122 Ill. 2d 448, 459.) Instead, the failure to allocate goes to the question of whether the settlement was made in good faith, that is,

whether the tortfeasor, by settling with plaintiff, is unfairly attempting to pass on liability for arguably "uncontributable" claims by not allocating the settlement amount between the counts alleged. (*Leaman v. Anderson* (1988), 172 Ill. App. 3d 62, 67.) Here, no bad faith has been alleged.

■ Therefore, all the settlement proceeds obtained, including the $24,000 from Olson, would be subject to setoff provided that all of the codefendants' liabilities arose out of the "same injury." The fact that all the defendants are not "joint tortfeasors" does not determine the issue. As this court explained in *Morgan v. Kirk Brothers, Inc.* (1982), 111 Ill. App. 3d 914:

> "Although the act is styled 'An Act in relation to contribution among joint tortfeasors,' neither section 302(a) nor the published Legislative History requires that the tortfeasors be joint in the strict sense, that their tortious acts be simultaneous, or that they act in concert before contribution will lie. The only apparent requirement for contribution between co-tortfeasors is that recovery over be based on the same injury to person or property. Thus, the act permits contribution where co-tortfeasors are concurrent [citations] or successive [citation] as long as the same injury is involved." 111 Ill. App. 3d at 918.

■ The Contribution Act provides little guidance as to what constitutes the "same injury." However, it appears that, in order for contribution to lie, at least some type of culpable conduct must exist which contributed to plaintiff's injuries. (*Wheeler v. Ellison* (1984), 124 Ill. App. 3d 852, 863.) We find that the acts of Kenneth Olson, Olson & Associates, General Casualty, KFS-James, State Security and Friedberg (hereinafter referred to collectively as the insurance defendants) in no way contributed to, or resulted in, the same injury to plaintiff as did the acts of defendant Morgans.

For lack of Illinois precedent on this point, we turn to a Maryland case for guidance. In *Huff v. Harbaugh* (1981), 49 Md. App. 661, 435 A.2d 108, the plaintiff sued an adjoining property owner for damages sustained as a result of a fire that spread to and damaged plaintiff's property causing his tenants to vacate. In the same suit, plaintiff sued his insurance agent for failing to procure a fire insurance policy on plaintiff's building. Before trial, plaintiff settled with the adjoining property owner. The insurance agent then sought to "be credited, *pro tanto*, for the amount paid" by the settling party. (*Huff*, 49 Md. App. at 665, 435 A.2d at 111.) The Maryland Court of Special Appeals held that the insurance agent was not entitled to contribution under the Uniform Contribution Among Tort-Feasors Act (Md. Ann. Code art.

50, §§16—24 (1976)) because his act did not result in the "same injury" to the plaintiff as did the acts of the adjoining property owner. (*Huff*, 49 Md. App. at 665, 435 A.2d at 111.) Even though both parties were sued in negligence based upon fire damage to the plaintiff's building, the court explained:

"A closer look at the cause of action against [the insurance agent] reveals that its premise is not the fire damage to the building, but rather a breach of promise to secure fire insurance. [The insurance agent's] actions are related to [the adjoining property owner's] only by the fact that were it not for the negligence of [the adjoining property owner] and the resultant fire, the [insurance agent's] failure to procure the insurance would not have been brought to issue. Thus, it would be more accurate to categorize the injuries caused by [the insurance agent] and [the adjoining property owner] as 'related' rather than the 'same.' " *Huff*, 49 Md. App. at 666, 435 A.2d at 112.

Similarly, the actions of the insurance defendants in the case at bar are related to the Morgans' only by the fact that, were it not for the negligence of the Morgans and the resultant injuries suffered, the insurance defendants' failure to procure the requested insurance would not have been brought to issue. (*Huff*, 49 Md. App. at 667, 435 A.2d at 112.) Consequently, the injuries caused by the insurance defendants and the Morgans would also be more accurately characterized as "related" rather than the "same." (*Huff*, 49 Md. App. at 666, 435 A.2d at 112.) Because the injury is not the "same," we find that the Contribution Act is inapplicable and the trial court erred in granting the Morgans' post-trial motion to reduce judgment on the verdict.

Defendants' citation to *Nguyen v. Tilwalli* (1986), 144 Ill. App. 3d 968, is unpersuasive. In that case, the plaintiff, Nguyen, brought a medical malpractice action against defendant, Dr. Tilwalli, and others for injuries sustained to his nose. A settlement was reached between Nguyen and the other defendants whereby the defendants agreed to pay Nguyen $15,000 in settlement of his claim. Dr. Tilwalli and Nguyen proceeded to trial. The jury found Tilwalli to be negligent and awarded Nguyen $11,000 in damages. In his post-trial motion Tilwalli sought a setoff against the verdict in the amount of the $15,000 paid by the other defendants. The relief was granted by the trial court pursuant to section 2(c) of the Contribution Act, and plaintiff's damages were reduced to zero. (*Nguyen*, 144 Ill. App. 3d at 971.) On appeal, we affirmed the trial court; however, in doing so we stated, "there is no question one indivisible injury to plaintiff's nose resulted from the alleged tortfeasors' conduct." (*Nguyen*, 144 Ill. App. 3d at 972.) To al-

low Nguyen to recover from Dr. Tilwalli in addition to the settlement he received from the other defendants would have resulted in double recovery. *Nguyen*, 144 Ill. App. 3d at 973-74.

In contrast, we have already determined that plaintiff in the case at bar did *not* suffer one indivisible injury as did the plaintiff in *Nguyen*. Rather, plaintiff suffered at least two injuries: namely, the injury allegedly caused by the insurance defendants in failing to procure the requested insurance and the injury caused by the Morgans on January 4, 1985. Consequently, to allow plaintiff to be compensated for each injury will not result in double recovery.

For the reasons stated above, we reverse the judgment of the trial court.

Reversed.

UNVERZAGT, P.J., and McLAREN, J., concur.