PHYLLIS C. KINZER, a Taxpayer on Behalf of and for the Benefit of the City of Chicago, Plaintiff-Appellant, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant-Appellee.

First District (2nd Division)   No. 1—89—2885

Opinion filed May 7, 1991.

Robert S. Atkins & Associates, of Chicago (Robert S. Atkins and Robert E. Williams, of counsel), for appellant.

Edward P. McNeela, of McNeela & Griffin, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Phyllis Kinzer appeals from that part of the dismissal of her suit against Fidelity and Deposit Company of Maryland (Fidelity) in which she claimed that Fidelity was liable to the City of Chicago (City) pursuant to a "Public Employees Blanket Bond" (bond) for losses sustained by the City as the result of certain actions taken by former City Comptroller Daniel Grim. The circuit court denied Kinzer's, but granted Fidelity's, motion for partial summary judgment, holding that because Grim was exempt from liability under the common law doctrine of public official immunity, and because the bond was one in which it was a surety for Grim, Fidelity was likewise not liable for his actions. Kinzer contends that Fidelity was not a surety for Grim and that therefore it could not avail itself of Grim's immunity as a defense.

The circuit court's judgment related to count II of Kinzer's "Verified Fourth Amended Complaint," filed on October 14, 1985, the essential allegations of which we summarize as follows.

Grim and other City officials signed several contracts with Festivals, Inc. (Festivals), pursuant to which Festivals agreed to produce a series of events for the City during 1980-83. Grim, while City comptroller, signed two of these contracts, which obliged Festivals to produce five events during the period of October 1980 to October 1981, and which authorized Festivals to negotiate agreements on the City's behalf with suppliers of goods and services for these events. Festivals exercised this authority.

Festivals was paid from an account designated "Fund 666," from which money was also drawn to pay for other events sponsored by the Mayor's Office of Special Events. This account received some of its funds as the result of transfers from "Fund 355," the Hotel Operator's Tax Fund, into which there were deposited all receipts from the City's hotel operator's tax; the remainder of its funds were derived

from profits earned from the various festivals and events. Monies withdrawn from Fund 355 were not repaid to it when the events earned a profit.

The Chicago City Council (City Council), however, never appropriated money to Fund 666, nor did it appropriate monies to be spent in fulfilling the contracts with Festivals. In 1983, after Grim had left office, the acting city comptroller suspended expenditures from Fund 666. By that time, over $28.1 million had been spent for these festivals and other events without any appropriation having been made therefor by the City Council, and the City is alleged to have suffered a net loss of over $7 million.

The bond, which was entered into between Fidelity and the City in 1977, contains four "Insuring Agreements." The third and fourth of these agreements both require, in return for premiums paid by the City, that Fidelity indemnify the City up to stated limits, which are different for each "Insuring Agreement," for:

"Loss sustained by the Insured [the City] through the failure of any of the Employees [alleged by Kinzer to include Grim], acting alone or in collusion with others, to perform faithfully his duties or to account properly for all monies and property received by virtue of his position or employment ***."

Kinzer originally sought summary judgment on count I of her complaint against the City, seeking to void the contracts between Festivals and the City and a declaration that expenditures made pursuant to the contracts or otherwise made from Fund 666 violated section 8—1—7 of the Illinois Municipal Code (Code) (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7), which prohibits the making of contracts or the incurring of expenses by municipal authorities without a prior appropriation. Kinzer also sought partial summary judgment with respect to count II on the issue of the liability to the City, for breach of fiduciary duty, of Grim and other City officials who had signed the contracts, as well as of the liability of Fidelity on its bond and of United States Fidelity and Guaranty Company (USF & G), which had bonded other City officials who were alleged to have also signed the contracts with Festival. Grim filed a cross-motion for summary judgment on the issue of his liability for any losses the City had incurred.

The circuit court, on August 1, 1986, denied Kinzer's motions for a declaratory judgment and for a determination of Grim's liability, postponed judgment on the liability of the other City officials involved, of Fidelity and of USF & G, and granted Grim's motion to dismiss the claims against him. This court reversed (*Kinzer v. City of Chicago* (1988), 169 Ill. App. 3d 447), holding in part that the City and

Grim violated section 8—1—7 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7) by entering into the contracts and expending money for the festivals and events without having appropriations made by the City Council, and that Grim was strictly liable for any of the resulting losses he caused to the City. The Illinois Supreme Court, in *Kinzer v. City of Chicago* (1989), 128 Ill. 2d 437, affirmed our judgment that the expenditures made by Grim violated section 8—1—7 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7), but exempted Grim from liability as to any resulting losses to the City:

> "Illinois recognizes the common law public official immunity doctrine ***. [This] doctrine provides that 'a public officer is immune from individual liability for the performance of discretionary duties in good faith.' (*[People ex rel. Scott v.] Briceland* (1976), 65 Ill. 2d [485,] 502.) Although the expenditures made by Grim violated section 8—1—7 of the Code, he had no reason to believe that these expenditures were illegal ***. *** Grim's official conduct in entering into contracts, incurring expenses and charging these expenditures to Fund 666 clearly fall within the boundaries of the common law public official immunity doctrine." 128 Ill. 2d at 445-46.

Kinzer then renewed her motion for partial summary judgment as to Fidelity's liability on the bond. Fidelity filed a cross-motion for summary judgment on its liability for Grim's actions. On October 23, 1989, the circuit court denied Kinzer's motion and granted Fidelity's. Kinzer appeals.

■ Section 2—1005(c) of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c)) empowers a court to render summary judgment when "there is no genuine issue as to any material fact and *** the moving party is entitled to a judgment as a matter of law." Kinzer does not allege the existence of any genuine issues of material fact, but rather, contests the legal propriety of the circuit court's judgment that the bond protects Fidelity from liability for losses caused by Grim simply because he enjoys personal immunity for his acts. Accordingly, we review the order of the circuit court in light of the standard that, "[t]he construction, interpretation, and legal effect of a contract are questions of law [which may] be determined by *** a reviewing court *** independently of the circuit court's determination." *Mitchell v. Jewel Food Stores* (1989), 189 Ill. App. 3d 450, 459, *rev'd on other grounds* (1990), 142 Ill. 2d 152.

■ Fidelity argues that it is a surety for Grim and that the language of the bond clearly shows that its liability is predicated on Grim's. We disagree. The bond, as noted above, imposes liability on

Fidelity for losses to the City when an employee fails "to perform faithfully his duties or to account properly for all monies and property received by virtue of his position or employment." Fidelity relies upon Grim's "good faith" immunity from liability for having violated section 8—1—7 of the Code (Ill. Rev. Stat. 1985, ch. 24, par. 8—1—7) (*Kinzer*, 128 Ill. 2d at 445-46), to show that he did not fail "to perform faithfully his duties." However, Fidelity ignores the remaining part of that clause, which imposes liability on it for Grim's "failure *** to account properly for all monies and property received by virtue of his position or employment." Grim, by spending public moneys through the use of Fund 666, a device which permitted bypassing of the need to secure the necessary authority for such expenditures, clearly failed "to account properly for all monies and property received by virtue of his position or employment," even if "he had no reason to believe that these expenditures were illegal." (*Kinzer*, 128 Ill. 2d at 445.) We fail to perceive what Grim's state of mind in so doing, *i.e.*, his "good faith," had to do with whether he "properly" accounted for funds under his control. Therefore, insofar as the language of the contract is concerned, Grim's "good faith" is not relevant to Fidelity's liability under the bond; nor do we find any ambiguity in the bond which would require a determination of whether the parties intended that Fidelity's liability be predicated upon Grim's.

■ Moreover, the bond does not elsewhere predicate Fidelity's liability on Grim's. Fidelity, which pursuant to the bond, "agrees *** to indemnify the Obligee [City] for the use and benefit of the Insured [City] for: *** Loss caused to the Insured," is neither made "liable for a debt," nor is it required to "perform the obligation of the principal [in this case, Grim]," as in *Erickson v. Fitzgerald* (1950), 342 Ill. App. 223, 230-31 (defining a surety). (See also *Vee See Construction Co. v. Luckett* (1981), 102 Ill. App. 3d 444, 447.) The bond, in essence, imposes a greater scope of liability on Fidelity for "Loss caused to the Insured [by various actions of certain employees]" than it would have if, in addition to the requirement of a loss, it also required that the employee causing the loss be in debt or otherwise obligated to the City.

■ While we recognize that Fidelity is described throughout the bond as the "surety," that one is so described does not *ipso facto* determine that the liability intended to be created was that of a surety. Rather, the nature of the obligation is the determining element. (*Vermont Marble Co. v. Bayne* (1934), 356 Ill. 127, 131. See also *Reserve Insurance Co. v. General Insurance Co. of America* (1979), 77 Ill.

App. 3d 272, 279 (bond which described the obligor as a "surety," but which required it to indemnify an insurance company against losses resulting from the dishonest actions of employees, was regarded as an insurance contract rather than a suretyship).) In this case, the nature of the obligation created by the language of the bond as set forth above does not create a suretyship.

For the foregoing reasons, the circuit court's grant of summary judgment in favor of Fidelity is reversed, and its denial of Kinzer's motion for summary judgment is also reversed, but only for the reason that the trial court's orders were predicated upon Fidelity's being a "surety" for Grim; accordingly, this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

HARTMAN and DiVITO, JJ., concur.