### ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff,

v.

### GREAT LAKES TURNINGS, LTD., National Material Trading, National Pinkert Steel, a Division of National Materials Ltd., and Tang Industries, Inc., Defendants.

### GREAT LAKES TURNINGS, LTD., Third–Party Plaintiff,

v.

### ALEXANDER & ALEXANDER, INC., Third–Party Defendant.

### No. 91 C 2019.

United States District Court, N.D. Illinois, E.D.

Sept. 19, 1991.

---

Warren J. Marwedel, Michael C. Neubauer, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

John H. Mathias, Jr., Robert R. Stauffer, Jenner & Block, Joel S. Feldman, Gary Todd Jackson, Sachnoff & Weaver, Ltd., Chicago, Ill., for defendants and third-party plaintiff.

William M. Stevens, Thomas Raymond Hill, Kurt M. Zitzer, Rooks, Pitts & Poust, Chicago, Ill., for third-party defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Great Lakes Turnings, Ltd. (Great Lakes) is in the business of collecting, selling and shipping steel 'turnings'. Turnings are metal slivers produced during the sheet metal stamping process. They are oil-soaked and highly flammable. Aware of the volatile nature of their product, Great Lakes turned to Alexander & Alexander,

Inc. (A & A), an insurance brokerage agency, for advice on and assistance in obtaining insurance for its business. Through A & A, Great Lakes obtained two insurance policies. Eventually, a shipment of turnings did catch fire aboard a ship and the purchaser of the turnings has sued Great Lakes in the Southern District of New York to recover its loss. One of Great Lakes' insurers has filed an action here, seeking a declaratory judgment that it is responsible for neither the defense nor liability of Great Lakes arising out of the fire. Great Lakes filed a third-party claim against A & A, claiming that if the loss is not insured, it is A & A's fault, and A & A should therefore indemnify Great Lakes. A & A has moved to dismiss the third-party claim and, for the reasons stated below, this court denies that motion.

### Background

Great Lakes alleges that it turned to A & A not only for assistance in procuring insurance, but also for advice regarding what types of insurance were necessary. A & A advised Great Lakes to procure cargo insurance and ship insurance, and Great Lakes followed that advice, authorizing A & A to purchase cargo insurance from Marine Office of America Corp. (MOAC) and ship insurance from St. Paul Insurance Co. of Illinois (St. Paul). A & A did not advise Great Lakes to procure insurance against its own negligence, nor did Great Lakes purchase such insurance. Both the MOAC and St. Paul policies were in effect at the time of the fire.

Immediately after it obtained the insurance policies, Great Lakes' practice was to notify A & A of the name, tonnage, on hire and off hire dates of its shipments, at the time the shipments were made. A & A however instructed Great Lakes not to report each shipment but rather, that shipments were to be reported on an "audit basis". Great Lakes notified A & A of the fire the day after it occurred (Great Lakes never dealt with either insurance company directly, it communicated only with A & A) and A & A told Great Lakes it would inform both insurance companies of the loss. A & A did in fact notify MOAC immediately after learning of the loss, but failed (Great Lakes alleges) to notify St. Paul until about three months later. The company to which Great Lakes had contracted to sell the turnings paid Great Lakes $2,000,000 for the shipment and turned to the cargo insurer, MOAC, for reimbursement. MOAC subsequently paid the purchaser approximately $1,000,000 and, as subrogee of the purchaser, itself turned to the ship for recovery, suing it in New York. *Marcial Ucin, S.A. v. M/V Star I*, No. 90 CIV 6323 (S.D.N.Y.) (the New York litigation). The owners of the ship named Great Lakes as a third-party defendant in that action, claiming that Great Lakes' own negligence caused the loss.

Great Lakes notified A & A of the New York litigation and, following A & A's advice, obtained counsel. A & A tendered the defense of the New York litigation to St. Paul, which agreed to defend Great Lakes in that matter but reserved its rights to contest both coverage and responsibility for the defense. In fact, St. Paul is contesting those very matters in this litigation, arguing that it is not liable for this loss because Great Lakes did not comply with the requirements of the contract—specifically, Great Lakes failed to inform St. Paul of the shipment or the loss in a timely fashion, and did not consult with St. Paul prior to retaining counsel for the New York litigation. Great Lakes attributes all these errors, if errors they were, to the bad advice it received from A & A, and seeks to hold A & A liable should St. Paul prevail on its suit for declaratory judgment.

### Discussion

The parties agree that Illinois law governs this diversity case, and A & A raises a number of arguments based upon Illinois law in support of its motion to dismiss. The standard governing this court's decision on such a motion is well established. Only if the allegations of the complaint, and all reasonable inferences drawn therefrom, could not support any cause of action may this court grant the motion. See generally Charles Wright & Allen Miller, 5A

*Federal Practice and Procedure:* Civil 2d § 1357 (West Publishing, 2d ed. 1990). With this standard in mind, the court will address each of A & A's arguments in turn.

## 1. Indemnification

In its third-party complaint, Great Lakes seeks indemnification for A & A's alleged breach of fiduciary duty in obtaining the insurance (Count 1), breach of contract (Count 2) and breach of fiduciary duty in administering the insurance contract (Count 3).[1] It seeks an order from this court ordering A & A to indemnify it for any costs, expenses and liability arising from either the New York litigation or this litigation. A & A's first argument in support of its motion is that Great Lakes has failed to state a claim for indemnification, since Illinois has rejected both the "active-passive" theory of indemnity among joint tort-feasors and the doctrine of implied indemnity in contract.

### a. Tortious Implied Indemnity

A & A argues that this court must dismiss Great Lakes' complaint because, since the advent of the Illinois Contribution Act, Illinois does not recognize a cause of action of implied indemnity among joint tort-feasors. See *Allison v. Shell Oil Co.,* 113 Ill.2d 26, 99 Ill.Dec. 115, 495 N.E.2d 496 (1986) (holding that implied indemnity is no longer an acceptable doctrine for shifting the cost of tortious conduct from one tort-feasor to the other). Great Lakes counters that it seeks recovery under a contract, not a tort theory and that *Allison* is therefore inapplicable.

■ In Illinois, claims for breach of fiduciary duty sound in agency, contract and equity, *Kinzer v. City of Chicago,* 128 Ill.2d 437, 445, 132 Ill.Dec. 410, 539 N.E.2d 1216 (1989) and thus are not subject to the Contribution Act (which applies only to tort claims). Ill.Rev.Stat. ch. 70, par. 302(a) (1986) ("... where 2 or more persons are

*subject to liability in tort* arising out of the same injury to person or property, or in the same wrongful death, there is a right of contribution among them ..."). See also *Giordano v. Morgan,* 197 Ill.App.3d 543, 549, 143 Ill.Dec. 875, 554 N.E.2d 810 (2d Dist.1990) ("one liable for breach of fiduciary duty is not 'liable in tort' under the Contribution Act...." (citations omitted)).

■ Breach of contract claims in Illinois are also not generally subject to the provisions of the Contribution Act, although the rule is not absolute. The critical question for Contribution Act purposes is not whether the claim against a particular defendant sounds in tort or some other legal theory, but rather whether the parties *might* also be "subject to liability in tort" for the injury to plaintiff. See *Giordano,* 197 Ill.App.3d at 548–49, 143 Ill.Dec. 875, 554 N.E.2d 810. Here, the claim against A & A arises out of A & A's procurement of insurance, not out of the alleged negligence that led to the loss of the turnings. Thus A & A would not be "subject to liability in tort" with any other party for the injury to Great Lakes. Accordingly, because neither the breach of fiduciary duty claims nor the breach of contract claim is subject to provisions of the Contribution Act, A & A's argument on that point must fail.

### b. Non–Tortious Implied Indemnity

■ A & A has a fall-back position, however. It claims that Great Lakes has no basis for seeking implied indemnity even if it bases its claim on contract rather than tort. A & A is wrong. Illinois courts have recognized the right of an insured to sue an agent or broker for indemnification arising out of the agent's or broker's failure to procure appropriate insurance for years, and in a number of cases. See, for example, *Pittway Corp. v. American Motorists Insurance Co.,* 56 Ill.App.3d 338, 346–47, 13 Ill.Dec. 244, 370 N.E.2d 1271 (2d Dist. 1977) ("an insurance broker is bound to

---

1. The court notes that it does appear from the allegations of the complaint and third party complaint that a true fiduciary relationship existed between A & A and Great Lakes—Great Lakes turned to A & A for assistance in choosing and procuring insurance, a burden which A & A, according to the complaint, willingly accepted.

exercise reasonable skill and diligence in the transaction of the business entrusted to him and will be responsible to his principal for any loss resulting from his failure to do so" (citations omitted)); *International Amphitheatre Co. v. Vanguard Underwriters*, 166 Ill.App.3d 369, 372, 116 Ill. Dec. 800, 519 N.E.2d 1015 (1st Dist.1988); *Economy Fire & Casualty Co. v. Bassett*, 170 Ill.App.3d 765, 121 Ill.Dec. 481, 525 N.E.2d 539 (5th Dist.1988).

■ A & A argues that because St. Paul is not seeking monetary damages from Great Lakes in its declaratory judgment action, there is nothing for which A & A can indemnify Great Lakes. This argument, however, is fatally flawed, although it illustrates an issue which does concern this court. St. Paul is suing in this court for a declaration that it is not liable for Great Lakes' defense or indemnification in the action pending in the Southern District of New York. If St. Paul is successful, Great Lakes will be left unprotected. However, Great Lakes claims that, should St. Paul succeed, it would do so only because of A & A's fault. Thus, Great Lakes has brought its counterclaim in this action, rather than in the New York action. It seems to this court that the most reasonable course would have been to bring both actions in the same district as the underlying case is pending, but neither of the parties has argued the question, and this court certainly does have jurisdiction to decide the matters pending before it. Matters of judicial economy and convenience aside, it is perfectly reasonable for Great Lakes to bring its counterclaim in this action since, unless St. Paul is successful, Great Lakes will have no need for indemnification.

2. Breach of Fiduciary Duty

■ Finally, A & A has moved to dismiss Great Lakes' claims for breach of fiduciary duty—Counts 1 and 3 of the complaint. A & A argues that Great Lakes failed to plead that A & A acted in bad faith and has therefore failed to state a cognizable claim for breach of fiduciary duty. A & A relies upon a single sentence in a Seventh Circuit opinion for its claim that bad faith is a necessary element of a breach of fiduciary claim in Illinois. See *Lazzara v. Howard A. Esser, Inc.*, 802 F.2d 260, 266 (7th Cir. 1986) ("The [insurance] broker is obligated to act in good faith and with reasonable care, skill and diligence in transacting the business of the principal.") A more accurate statement of Illinois law, however, is not that bad faith is an element of a breach of fiduciary duty claim, but rather that *good* faith is a defense. See, for example, *Chicago City Bank & Trust Co. v. Lesman*, 186 Ill.App.3d 697, 701, 134 Ill.Dec. 478, 542 N.E.2d 824 (1st Dist.1989), app. den. *Chicago City Bank & Trust Co. v. Lesman*, 128 Ill.2d 662, 139 Ill.Dec. 511, 548 N.E.2d 1067 (1990) ("[a] cause of action for breach of fiduciary duty must set forth allegations ... that a fiduciary relationship existed between the parties, that the trustee owed certain specific duties to the plaintiff, that the trustee breached those duties, and that there were resulting damages." (Citations omitted)); *Scarsdale Villas Associates, Ltd. v. Korman Associates Insurance Agency, Inc.*, 178 Ill.App.3d 261, 127 Ill.Dec. 463, 533 N.E.2d 81 (1st Dist. 1988) ("[a]n insurance broker has a duty to exercise reasonable skill and diligence in the transaction of business entrusted to him, and a broker who fails to procure insurance when obligated to do so, or who causes damage to his principal, whether by omission or commission, is liable for any loss the principal may sustain by virtue of his failure to procure insurance." (Citing *Omni Overseas Freighting Co. v. Cardell Insurance Agency*, 78 Ill.App.3d 639, 642–43, 33 Ill.Dec. 779, 397 N.E.2d 112 (1st Dist. 1979)). Compare *Economy Fire & Cas. Co. v. Bassett*, 170 Ill.App.3d 765, 772, 121 Ill.Dec. 481, 525 N.E.2d 539 (1st Dist.1988) ("[a] broker is not liable if he acts in good faith and with reasonable care, skill, and diligence to place the insurance in compliance with his principal's instructions." (Citations omitted).

■ The principle this court gleans from the above cases is that all Great Lakes need allege is that it had a fiduciary relationship with A & A, that A & A owed Great Lakes certain specific duties, that A

& A breached those duties, and that the breach damaged Great Lakes. Great Lakes has alleged each of these elements. A & A is free to assert its good faith as a defense to Great Lakes' legitimate claim.

3. Moorman Doctrine

Finally, A & A maintains that Great Lakes' fiduciary duty claims are barred by the *Moorman* doctrine. See *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). The *Moorman* doctrine bars recovery of purely economic losses in negligence actions. Great Lakes' claims, as this court has noted throughout this opinion, are based upon contract and agency theories. The *Moorman* doctrine does not apply.

*Conclusion*

A & A's motion to dismiss is denied.